John Henry SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17614.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1964.

Theodore F. Schwartz, Clayton, Mo., for appellant.

John Newton, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and DELEHANT, Senior District Judge.

DELEHANT, Senior District Judge.

In ostensible, and declared, reliance on Title 28 U.S.C. § 2255, John Henry Smith, identified hereinafter as "appellant," on July 22, 1963, filed in the United States District Court for the Eastern District of Missouri, Eastern Division, referred to hereinafter as, the trial court, a motion "to vacate and set aside judgment and commitment of (sic) a twenty-five year sentence imposed by the Honorable George H. More (sic), United States District Judge." The judgment and sentence at which that motion is directed are a judgment of guilty, and of conviction, under date of May 27, 1947, and a sentence thereunder of like date, to the custody "of the Attorney General or his authorized representative for imprisonment for a period of twenty-five (25) years as to and under the charge as contained in count one of the indictment," in Case No. 25435, a criminal action, in the trial court, "such term of imprisonment to commence upon the release of said defendant from the Missouri State Penitentiary under the concurrent terms of imprisonment of eight (8) years (t)heretofore imposed upon said defendant on May 12, 1947, in Division No. 12 of the Circuit Court of the City of St. Louis in cases numbered 236, 237, 238 and 239, of said court." To the proceeding initiated by the filing of such motion to vacate and set aside, the trial court attributed the number 63 C 267. The motion was, thus, and correctly, regarded as the initiation of a new action on the civil side of the trial court's calendar, although its declared, and actual, objective was the procurement of demanded corrective action in a criminal proceeding earlier prosecuted in such court. The motion was obviously filed sixteen years, one month, twenty-five days after the entry of the judgment and commitment at which it was and is aimed.

Fastened into the court file in the trial court's Case No. 63 C 267, whose first filing is the Motion to Vacate and Set Aside, and with no filing mark, but bearing September 18, 1963 as the date of its signature, is a typewritten resistance to such motion, signed in behalf of the United States Attorney for the District of the trial court.

On September 18, 1963, the trial court, speaking through the Honorable James H. Meredith, then and yet, one of its judges, entered an order directing that appellant be returned to the district of the trial court on September 30, 1963 at 10:00 o'clock A.M. for the purpose of being present and testifying upon such motion; that he be so made available by the United States Marshal or other authorized officer and the Warden of the United States Penitentiary at Atlanta, Georgia; and that, after the hearing or other disposition of such motion should have been completed, the officers so commanded have him before the court to abide its orders, judgments and decrees which might be rendered, and, otherwise, to return him immediately to such penitentiary, there to be held by its Warden in custody to serve out his sentence under which he was then being held.

On September 25, 1963, the trial court, again speaking through Judge Meredith, and, on the prompting of an affidavit of poverty and motion for appointment of counsel, bearing date September 20, 1963, and made by appellant and by him filed on September 23, 1963, made and entered a further order appointing Theodore F. Schwartz, Esq., of the St. Louis, Missouri bar as counsel, in the proceedings upon such motion, for appellant. The court pauses at this point to observe that Mr. Schwartz accepted that appointment and represented appellant with conspicuous industry and ability in the presentation of, and briefing in connection with, the motion in the course of its hearing in the trial court, and with like skill and care has prepared the pleadings for appeal to, and the briefs, and made

the arguments on appeal in, this court. He has the sincere appreciation of this court.

Through Mr. Schwartz as his counsel, appellant executed, and filed in the trial court on October 8, 1963, the responses to a questionnaire on a form apparently prepared for, and used within, the trial court in proceedings "attacking a sentence imposed in that court."

In such proceeding identified as 63 C 267 in the trial court, the motion came on for hearing therein on October 31, 1963, Mr. Schwartz representing the appellant (petitioner), who was also present, infra, and John A. Newton, Esq., Assistant United States Attorney, representing the respondent, United States of America. The records both in Case No. 63 C 267 and in the criminal action, Case No. 25435 were, by the trial court, considered, and oral evidence, including that of appellant in his own behalf, and sundry exhibits were introduced and received. Transcript of the trial record in seventy-seven pages was made (quite ob-

viously after the trial court's ruling), and is a part of the trial court's record. Typewritten briefs of counsel were filed. They reflect the fact, as does also the transcript, that the motion was submitted only upon two grounds by the motion asserted, namely (a) that the court failed to comply with Rule 11, Federal Rules of Criminal Procedure,[1] in that it accepted the appellant's plea of guilty to Count I of the indictment without ascertaining that such plea was made voluntarily with understanding of the nature of the charge, and the penalty therefor allowable, before the acceptance of the plea, and (b) that appellant was not adequately represented by counsel, within the contemplation of the sixth amendment of the constitution of the United States.[2]

On January 8, 1964, the trial court, again speaking through Judge Meredith, made and entered in Case No. 63 C 267 a Memorandum Order, wherein the trial court made the findings and entered the order reflected in a footnote hereto[3] quoted from that filing.

---

1. Rule 11, in its pertinent aspect, is in this language:
 "A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge."

2. The applicable language of the sixth amendment of the Constitution follows:
 "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

3. The following language is excerpted from the trial court's Memorandum Order entered and filed on January 8, 1964:
 "The federal district judge who took petitioner's plea and imposed sentence, the petitioner's court-appointed counsel, and the court reporter who recorded the arraignment, plea and sentence had on May 27, 1947, are all dead. Transcript of the proceedings held on that date is before the Court. The transcript shows the following: the United States Attorney clearly stated the substance of the charges and the possible length of sentence; petitioner stated he had received

a copy of the indictment although the transcript shows that counsel advised the Court that petitioner could not at that time read or write. At the arraignment counsel was appointed for petitioner. There was a recess for the purpose of consultation. Later petitioner and his court-appointed counsel reappeared. His counsel stated that he had gone over the facts thoroughly with petitioner and that he thought the facts would not justify the second count of the indictment, the Dyer Act charge, whereupon the second count was stricken and counsel for petitioner stated that the petitioner desired to enter a plea of guilty to the kidnapping charge, whereupon he was sentenced to twenty-five years imprisonment. In the subsequent sentencing of his co-defendant, petitioner stated to the Court that he was the one who beat the taxi driver on the head with a jack handle.

"The petitioner testified at his § 2255 hearing that he consulted with his court-appointed attorney about twenty minutes. This apparently was during the recess allowed for that purpose. While the petitioner testified that his counsel did not ask him about particular facts in the case, this is refuted by the record which shows that this court-appointed counsel knew enough about the facts of the case

. On January 15, 1964, appellant filed in the trial court a motion to appeal in forma pauperis to this court from the foregoing judgment of January 8, 1964; and, on the same day, the trial court, "finding that the appeal is not frivolous and presents a substantial question," sustained such motion, and granted to the appellant leave to appeal to this court in forma pauperis, and ordered the Court Reporter, at the government's cost, to prepare and file with the Clerk of the trial court a transcript of the proceedings of the hearing on the Motion.

The appellant, on January 16, 1964, filed his notice of appeal to this court from the Memorandum Order of the trial court under date of January 8, 1964. The appeal has been submitted here on typewritten briefs and oral argument, and upon the original files, which include those in both of the trial court cases numbered 63 C 267 and 25435.

The criminal proceeding, Case No. 25435, in the trial court, is basic to all of the litigation mentioned herein, including No. 63 C 267, and this appeal in that case. The original files in Case No. 25435 are before this court. And the historical aspect of this opinion rests in considerable measure on that record.

On May 15, 1947, the grand jury in and for the Eastern District of Missouri, Eastern Division, found and returned an indictment in two counts, in Count I whereof, it charged that on or about the 8th day of December, 1946, JOHN HENRY SMITH (alias Willie Smith,

to obtain a dismissal of one count of the indictment. Petitioner's contention in respect to his counsel appears to be based on the shortness of time involved in the consultation and the theory that if, as petitioner testified, the taxi-cab driver had taken him voluntarily as a fare-paying passenger from Missouri to Illinois and the robbery occurred in Illinois, then he had a potential defense to the crime of kidnapping which was not offered by his counsel. It is apparent that only a short time was devoted to consultation before the plea was entered, but it appears also that counsel did investigate the facts of the case and inquired into petitioner's background. We do not find valid petitioner's contention with respect to the failure of his counsel to set forth a defense of doubtful probative value and which is refuted by his signed statement and his plea of guilty in the Missouri state court to robbery. Hence, we conclude as a matter of law that petitioner has not sustained his burden of showing ineffective assistance of counsel.

"Petitioner's major contention is that the sentencing court did not ascertain if the petitioner understood the nature of the charge and the penalty involved before it accepted his plea of guilty and did not advise the petitioner of his right to trial by jury. The transcript reveals that there was substantial compliance with Rule 11 of the Federal Rules of Criminal Procedure. The indictment was not read to the petitioner, but the substance of the charge was stated and the colloquy between counsel and Court must have afforded the petitioner a clear understanding of the crime with which he was charged. While the petitioner did not personally state his plea of guilty, his counsel told the Court that the petitioner desired to plead guilty. Petitioner showed little reluctance in speaking up later in the proceedings to state that he, rather than his co-defendant, struck and beat the taxi driver. It further appears that the petitioner had a criminal record and was not unversed in criminal matters. He had just concluded a criminal proceeding in the state court at the time of his appearance in federal district court and prior to that he had had a conviction for a crime in the State of Mississippi. The statements made in his presence during his arraignment and plea, his knowledge of criminal matters and his testimony on this § 2255 hearing have convinced the Court that the petitioner understood the nature of the charge and knowingly entered his plea of guilty through his attorney. Petitioner testified that Police Office— Cook had told him that if he didn't plead guilty to Missouri state charges of robbery, he would be taken back to Mississippi and hanged. Police Officer Cook denied this. It is of little importance here for petitioner testified that such a threat was not made to him in connection with the federal kidnapping charge and that he did not enter his plea of guilty to kidnapping to avoid going back to Mississippi. Petitioner's allegation that his plea was entered through fear and intimidation clearly was not substantiated at the hearing.

"Accordingly, IT IS ORDERED that the motion of the petitioner to set aside his sentence be and the same is hereby overruled."

alias John Henry Barnett) and PAUL JOHN JACKSON, unlawfully, willfully, knowingly and feloniously transported and caused to be transported * * * in interstate commerce a person who had been by said defendants unlawfully seized, confined, kidnapped, abducted, carried away, and held, for the purpose of robbery, to-wit, one William Edward Swink who was then and there by them, the said defendants, transported by means of an automobile from the City of St. Louis, in the State of Missouri, within the Eastern Division of the Eastern Judicial District of Missouri, and within the jurisdiction of the trial court, to the County of Madison in the State of Illinois, in violation of the then Title 18 U.S.C., section 408a, (see 48 Statutes at Large, 781, Act of May 18, 1934, Ch. 301; now, somewhat amended, Title 18 U.S.C., section 1201). It is briefly observed that in and by Count II of that indictment, those two designated defendants were charged with the transportation in interstate commerce of a stolen motor vehicle knowing it to have been stolen, in violation of the then Title 18 U.S.C., section 408 (now Title 18 U.S.C. § 2312), commonly known as the Dyer Act. Because the second count of the indictment was dismissed on arraignment, infra, it is not directly involved upon this appeal. It is mentioned, however, on the score of its bearing on the issue of the alleged inadequacy of counsel for the appellant. It was in the identical vehicular operation alleged in Count I that the operation charged in Count II occurred.

At the time of arraignment on the indictment, both John Henry Smith and Paul John Jackson were in the custody of the State of Missouri, under sentences pronounced upon both of them, but severally, in and by Division 12 of the Circuit Court of the City of St. Louis, Missouri, on May 12, 1947, in four separate cases in that court, each involving charges of first degree robbery against both of them, numbered consecutively 236, 237, 238 and 239, the defendant John Henry Smith under four sentences of eight years each, to be served concurrently, and the defendant Paul John Jackson under four sentences of five years each, to be served concurrently. Those state court sentences arose out of the transaction which also led to the indictment in Case No. 25435 in the trial court herein.

On May 27, 1947, the Missouri state authorities, by one Burns of the sheriff's office, produced John Henry Smith and Paul John Jackson for arraignment upon the charges against them, supra, made in and by the foregoing indictment in Case No. 25435, in and before the trial court, the Honorable George H. Moore (not "More"), then the judge of such court senior by appointment (the formal title of chief judge of such court not having been erected) presiding. For such arraignment the defendants John Henry Smith and Paul John Jackson were both personally and concurrently present. Herbert Freer, Esq., represented the United States of America, and one John J. Kelly, as court reporter, recorded the proceedings.

Mr. Freer, in behalf of the United States, introduced the subject of the arraignment, identified John Henry Smith and Paul John Jackson; in their presence and hearing and in the presence and hearing of each of them, correctly and accurately summarized the indictments and the maximum allowable sentences under each of the two counts, repeating the statement respecting the maximum punishment under Count I. Upon the special inquiry of Judge Moore, in the presence and hearing of both defendants, with particular emphasis upon the fact that the only limit upon the duration of allowable imprisonment was "the discretion of the court," that statement fairly reflecting the consequence of the statutory language that in such situation the punishment be "by imprisonment in the penitentiary for such term of years as the court in its discretion shall determine;" and upon inquiry by Mr. Freer, after he had stated that "copy of the indictment was mailed to each defendant under date of May 16, 1947, when returned by the grand jury," each of John

Henry Smith and Paul John Jackson answered, "yes," to the question whether he had gotten a copy of the indictment. All of that colloquy occurred in open court, with both of the defendants before the court, and before the question of their representation by counsel had been presented.

But immediately, Judge Moore inquired of the defendants upon the subject, with the direct question, "Have you boys a lawyer?" To which they joined in the single answer, "No." Judge Moore, thereupon, announced the appointment of J. Ray Weinbrenner, Esq., as counsel for John Henry Smith, and Walter Kramer, Esq., as counsel for Paul John Jackson. Mr. Weinbrenner is referred to in the record as Judge Weinbrenner, but, from the observations of counsel in the submission to this court of the present appeal, it is understood that he was engaged in the practice of law, with some emphasis on the conduct of criminal litigation. From the transcript of the proceedings before Judge Moore, it is concluded that both of Messrs. Weinbrenner and Kramer were in the court room at the time the arraignment was called for attention.

Upon that appointment of counsel, Mr. Weinbrenner at once inquired, "May we have time to consult our clients;" Whereto, Judge Moore replied, "Yes. The sheriff may want to accompany them. Take them to the witness room and the sheriff can stand at the door." It must be remembered that Smith and Jackson were then both prisoners in the sheriff's custody. Smith and Jackson and Messrs. Weinbrenner and Kramer withdrew for, and had, a conference.

After an inexactly established interval thereafter, which, from the testimony is found to have been approximately one-half hour, Messrs. Weinbrenner and Kramer and John Henry Smith and Paul John Jackson reappeared in the court room and approached the bench. In open court, Judge Moore presiding, and in the presence of both John Henry Smith and Paul John Jackson, Mr. Weinbrenner took the initiative in the further proceedings. He said:

"I have had a talk with my client, Mr. Smith, and I went over the facts."

To an inquiry by Judge Moore, he identified Smith in the following response:

"Here. I went over the facts thoroughly."

Upon Judge Moore's further inquiry, Smith declared his age to be twenty, and Jackson stated that he was somewhat less than nineteen and one-half years of age. Thereupon, the following colloquy proceeded:

"Judge Weinbrenner: Mr. Smith has two counts against him. One is kidnapping and carrying away a man against his will and the other driving a stolen automobile across the State line. On that it occurred to me that the facts in this case would not justify the second count.

"Mr. Freer: I think we will have no quarrel about it. The second count, if the plea is to be entered, will be stricken with leave.

"Judge Weinbrenner: Well then, of course, we will enter a plea. I do not think the second count will stand up. As to the first count, the defendant desires to plead guilty. This boy was born in Mississippi and is uneducated, cannot read or write. He says he can sign his own name. He has been separated from his parents—

"The Court: He is a public menace.

"Mr. Weinbrenner: He has been separated from his parents since he was ten years old. I understand his parents are now separated, and one lives in Mississippi or Jackson, Tennessee, and the other one in Memphis. He is only twenty years old. He has been in trouble once before, in Mississippi. He got a year—

"The Court: Three times. He served a year once and three months twice."

After brief further comment, Mr. Weinbrenner, in behalf, and in the presence and hearing of John Henry Smith, announced:

"Under the circumstances he will plead guilty to Count I."

Mr. Kramer then tendered a plea of guilty to Count 1 of the indictment in behalf of Paul John Jackson, in the latter's presence and hearing. And counsel for the government announced the dismissal, as against both defendants, of the Dyer Act charge against both defendants contained in Count II.

Mr. Freer, in behalf of the United States, then made to the court, and in the presence of both defendants and Messrs. Weinbrenner and Kramer, "a statement of the facts gathered from his file." His statement was stenographically reported, but was not transcribed, and no copy of it is before the court.

Mr. Weinbrenner, in behalf of John Henry Smith, then inquired:

"Your Honor would not consider leniency, would you?"

By an immediate counter question addressed to Mr. Weinbrenner, Judge Moore made a response signifying an emphatically negative answer to Mr. Weinbrenner's query.

Judge Moore then discussed briefly the seriousness of the charge under Count I, rooted·as it was in a kidnaping. With a probable view to a comparative reflection, and in the face of his duty of the discretionary determination of the duration of imprisonment, he adverted to the statutory provision of the concluding clause of what is now Title 18 U.S.C. § 2114, not involved in the case before him, but possibly of significance touching congressional thinking in relation to the appropriate punishment for a crime of somewhat similar malice. He then imposed upon John Henry Smith the sentence against which Case No. 63 C 267 in the trial court and this proceeding on appeal are directed, supra; and upon Paul John Jackson a sentence, not directly involved herein, to the same general effect, except that under Jackson's sentence the concurrent servitude is for ten years rather than twenty-five years, and the underlying concurrent state sentences to be accorded prior service are shorter than those imposed upon John Henry Smith. That concluded the pronouncement of the sentences.

But, before being removed from the court room, in fact immediately upon the imposition of sentence upon him, Paul John Jackson, at Mr. Kramer's request, was allowed by Judge Moore to address the court. He did so, and thereby sought to minimize in some respects the magnitude of his offense. Among other things, while he acknowledged his participation in the interstate transportation and robbery of Swink, he denied that he had had any part in beating him with an automobile jack handle, and claimed that he had tried to dissuade John Henry Smith from that beating, and had left the scene before it occurred. And John Henry Smith immediately and expressly agreed in open court that Jackson was correct in that behalf, and that he, Smith, alone, had conceived, and over Jackson's protest against, and attempt to prevent, it, had administered the beating to Swink. Respecting the beating and assault inflicted upon Swink, see comment, infra, and the related statement in writing by John Henry Smith, of which a copy is set out in a footnote.[4]

4. This is a copy of the complete statement of John Henry Smith to George H. Capp, a special agent of the Federal Bureau of Investigation on March 17, 1947:

"St. Louis, Mo.
March 17, 1947

I, John Henry Smith, hereby make the following voluntary statement to George H. Capp, a special agent of the Federal Bureau of Investigation. No threats or promises have been used against me and I know that this statement may be used against me in a court of law. I also know that I do not have to give this statement.

I was born September 5, 1926 in Ripley, Mississippi. I am also known as Willie Smith and John Henry Barnett.

At about 9 P M on December 8, 1946 Paul Jackson and I saw a taxicab

Let it be understood that this court, after careful review of the findings in this paragraph mentioned, in association with the records in both Case No. 25435 and Case No. 63 C 267 in the trial court, fully approves, and, in supplementation of its own statement herein of this case on appeal, adopts, as its own, the findings of fact included in the concise and accurate Memorandum Order of the trial court, by Judge Meredith, as copied in footnote 3, supra.

This court is confronted with the question whether, upon either of the two grounds for relief from the judgment and commitment against him, assigned by the appellant in his Motion to Vacate and Set Aside Judgment and Commitment filed on July 22, 1963, supra, the appellant is entitled to the relief for which he prays.

 The appellant's recourse to the trial court, under his Motion to Vacate and Set Aside Judgment and Commitment, is a collateral attack upon a judgment of a court of general jurisdiction in a proceeding clearly within its jurisdictional reach. That is no less true because the judgment assailed is one made and given as the final judgment in a major criminal case. Here, as in such instances generally, the burden of proof in respect of each such ground for relief against the judgment rests upon the moving party, that is to say, the appellant, John Henry Smith; and in

evaluating the evidence before it upon the pending Motion, the trial court was entitled, indeed, required, to, and did, weigh the evidence and determine its credibility and probative significance, even in respect of testimony not formally contradicted. Hawk v. Olson, 326 U.S. 271, 279, 66 S.Ct. 116, 90 L.Ed. 61 (note 7); Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830; Williams v. Kaiser, 323 U.S. 471, 474, 65 S.Ct. 363, 89 L.Ed. 398. Thus, in Johnson v. Zerbst, supra, it was said that:

"It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity."

And the merits of each of the two specifications of denial of rights of appellant, supra, must be determined with proper, yet rational, regard for that rule.

Nor should the circumstance be disregarded that we are not here dealing with a proceeding in which a trial court, confronted with a motion for the vacation of a judgment and sentence in a criminal action, has summarily rejected and overruled the motion for inadequacy of the pleading to support the grant of such relief, and has thereby denied to the moving party the right to establish a

parked in front of the Illinois Terminal building, 710 North 12th Street, St. Louis. We decided to rob the driver of the taxi, so entered the taxi pretending to be fares. Jackson entered the front seat of the taxi next to the driver and I got in the back seat. I directed the driver to drive north on twelfth street to Cass avenue, then east on Cass to 9th Street. I then told the driver to drive east. When we were on Dock Street, I placed the barrel of my gun against the back of the driver's head and told him that 'This is a holdup.' Jackson and I then searched the driver and took his wallet and emptied it. I then ordered the driver to take off his rings and wrist watch. I then told the driver that I would drive and told the driver to move over. Jackson then got

into the rear seat. I then drove to the McKinley Bridge and crossed the bridge into Venice, Illinois. After driving around Venice for awhile, I stopped the car and ordered the taxi driver out of the car. I took the jack from the car and struck the driver over the head with it. I think I hit him about two or three times.

Jackson and I then abandoned the cab in Venice, Illinois.

The above statement has been read to me by George H. Capp and it is true and correct. I sign my name.

/s/ John Henry Smith

Witnessed by:

Edw. J. Remmert, Tky. Cent. Dist.

Det. James Cook, S.S.D.

George H. Capp, FBI—St. Louis, Mo."

pleaded factual situation, which, if true, would have sustained the demand. In this instance, the trial court has accorded to appellant a full trial upon the merits of his contention, has directed for such trial his transportation to St. Louis from the remote place of his confinement, and has received and preserved a record of the evidence and testimony by him submitted in the way of proof. He has had the full opportunity to make his proof. And it is the sufficiency or inadequacy of that proof which mattered to the trial court, and now matters to us.

■■ With no inference respecting the appellant's own attribution, as between his two claimed grounds for relief against the sentence pronounced upon him, of primacy of importance, it is noted that the one of those grounds to which he first invites attention is Judge Moore's asserted failure to observe Rule 11, Federal Rules of Criminal Procedure, of which a copy is set out in footnote 1, supra. Its sentence, material on this occasion, is "The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." The rule does not prescribe, or even suggest, a particular technique or procedure whereby the judicial determination thus required is to be arrived at. Nor does the appellant contend otherwise. It would appear to be necessary—but also sufficient—that the trial judge reach the imperative conclusion by any rational means appropriate to the setting which evokes it. The trial court, speaking through Judge Meredith, concluded, for reasons set forth and discussed in its Memorandum Order, that Judge Moore had met that test and complied with the rule.

The colloquy which occurred in the sentencing court preliminary to, and including, John Henry Smith's plea to, and commitment upon, Count I of the indictment against him, has been fairly reflected and discussed by Judge Meredith (see footnote 3). It has also been reflected and partly quoted herein. The trial court, Judge Meredith speaking considered that it discloses a compliance with Rule 11. We agree.

In this connection we are aware that on May 27, 1947, the Honorable George H. Moore was already a seasoned and experienced trial judge of his busy and important court. He had then served as one of its judges since 1935, therefore, approximately twelve years. He was familiar with the federal criminal law and its administration. When John Henry Smith and Paul John Jackson were brought before him, and after a clear and fair analysis of the indictment in their presence and hearing by Mr. Freer, Judge Moore promptly ascertained that neither of them was represented by counsel. At once, in fact, without awaiting a formal request therefor, he designated, from the members of the bar present in the court room, a separate attorney for each of them, even though they were charged in a single indictment with the commission of the same two offenses. No question is—or, it is believed, could be—advanced touching the ability of either attorney so appointed, particularly of Mr. Weinbrenner, with whom alone we are presently concerned.

Mr. Weinbrenner, for both himself and Mr. Kramer, promptly requested and obtained time for a conference with the defendants then before the court, and, at the suggestion of Judge Moore in granting the request, the two attorneys and their defendant clients repaired to an available room for a conference privately held. Retiring to the conference room, the two attorneys took with them the copies of the indictment already delivered to them by Mr. Freer in the court room, which, beyond reasonable question, were vital ingredients of the conference. After such time as had seemed to them to be adequate for that purpose (which, upon the present record may not be found with certainty and is here, supra, reasonably estimated from the evidence), the attorneys and the two defendants returned to the court room and signified their readiness to proceed. So returning, Mr. Weinbrenner, in behalf of the appellant,

exhibited a clear and practical understanding of the charges against his client, supra et infra. Counsel, on such return, also promptly and on their own initiative, signified the intentions of their respective clients to plead guilty to Count I of the indictment, but asserted that in the circumstances Count II was unfounded. Counsel for the government promptly agreed to the dismissal of Count II. Counsel for the government, in his early analysis of the indictment, had also and accurately explained the statutory limit of punishment under Count I. Later, and before imposing sentence, Judge Moore discussed in some detail that measure of punishment. And counsel made brief statements to the court of the backgrounds, including earlier criminal convictions, of their respective clients, both of whom were natives of Mississippi. All of that occurred in the presence and hearing of both of the defendants.

It is here observed that the record of that arraignment, although it is largely devoid of stylized austerity, and discloses a considerable measure of informality, is consistent only with the view that, throughout it, John Henry Smith and Paul John Jackson (each experienced in the reluctant position of a defendant before a court under like conditions) both knew adequately the exact charges made against them, and the allowable punishment therefor, and tendered their pleas understandingly and freely and voluntarily. It is concluded that, in the position which he occupied, Judge Moore was fully so convinced.

And this court is also convinced that, upon the hearing on the Motion to Vacate and Set Aside, the clear preponderance of the evidence supports a like view.

John Henry Smith testified in his own behalf. It must be stated that his evidence was unimpressive. It is true that some of his answers were explicit and categorical. But most of them were in the nature of disclaimers of a recollection of what has transpired in the arraignment, or in the conference with counsel in the conference room. His testimony was inadequate to sustain the burden of proof under which he labored, supra.

Witnesses presented by the United States in resistance to the motion included William Edward Swink, the victim of the kidnaping and transportation, James Cook, in 1947 an officer of the St. Louis Police Department, who arrested John Henry Smith, and George Capp (who did not use his initial), in 1947, a special agent of the Federal Bureau of Investigation, who investigated for the Department of Justice the criminal case here involved. Generally, their evidence directly supported the ultimate fact of the actual guilt of John Henry Smith under Count I of the indictment, rather than the occurrences at the arraignment and sentence. And at this point, this court sets out as a footnote hereto [4] a copy of the statement by Smith made to the witness George H. Capp, on March 17, 1947, vide supra.[5]

■ In respect of the second point assigned in behalf of John Henry Smith in support of his motion for relief from the sentence, namely the alleged deprivation of his right, under Amendment VI of the Constitution of the United States, to be represented effectively by counsel, this court is convinced of the correctness of the ruling of the trial court already adverted to and copied herein. There is actually no evidence of a persuasive character supportive of that contention.

---

4. See note 4 on page 525.

5. As Judge Meredith has mentioned, Judge Moore, Mr. Weinbrenner and the official court reporter, John J. Kelly, had died between the arraignment, plea and sentence, and the hearing on the Motion to Vacate and Set Aside. The trial court and this court have thereby been deprived of any testimony which any of them might have given. It is, of course, possible that the recorded but untranscribed statement of counsel for the government immediately preceding sentence may have contained material that would have been instructive on the present submission. But it appears to have been beyond submission.

It is true that the legal services of Mr. Weinbrenner in behalf of John Henry Smith, under appointment by the trial court, were entirely performed during the course of a single session of the trial court, and that they probably consumed little, if any, longer than thirty minutes. That is, indeed, a factor entitled to consideration in Smith's favor. But it is neither decisive nor persuasive. Time alone is not the measure of the merit of an attorney's service in such a situation.

When Mr. Weinbrenner undertook Smith's representation under appointment, he was confronted, first, with the necessity of determining, and advising, his client, whether he should plead guilty or not guilty, and in the latter alternative, participate in a trial on the issue of guilt. In many—probably most—situations, the arrival at the probably prudent answer to that question may be given after only a brief conference. And this appears almost certainly to have been such an instance. Smith had, recently (two months, ten days) before the arraignment, made and signed the written statement (footnote 4), in which he not only acknowledged the reality of facts proving his guilt of the charge in Count I of the indictment, but also emphasized the further fact that it was accompanied by the robbery of, and a shocking assault by him with a dangerous weapon upon, his victim. He had thereby almost invited the imposition of an extremely severe sentence in the event of conviction. He and Jackson had also only recently pleaded guilty to the charges against them made in the Missouri state court, and received the four concurrent sentences therein, arising out of the same incident as that giving rise to Count I of the indictment, supra. Both men also had antecedent criminal records in Mississippi. All of those factors, and the simple statement of the facts involved in Count I, could have been—as they demonstrably were—disclosed to counsel in a brief period of time. That they were so disclosed, but more directly that Mr. Weinbrenner gave serious and understanding, even if brief, consideration to them, and to Smith's plight, is made inescapably certain by his perception of the infirmity of the accompanying charge, under Count II, of the violation of the Dyer Act, and the elimination of that charge, upon the representation of him and Mr. Kramer, supra. Besides, his entire participation in the proceedings of May 27, 1947 reflect his accurate understanding of the case that had been entrusted to him, which is referable to the efficiency of the conference with his client, whose brevity the client now criticises.

This court has also observed the contention of the appellant made in his motion now under review that his plea of guilty was made "through fear and violence from the Sheriff's office." This position, not really maintained, either in the hearing on the motion before the trial court, or in this court on appeal, is wholly without evidentiary support. However, the trial court, through Judge Meredith, has dealt accurately and adequately with it; and we adopt his findings and conclusions touching it.

This court concludes, upon the basis primarily of Judge Meredith's findings, supra, but also of the facts hereinbefore set out and discussed, that the order of the trial court made and given on January 8, 1964, denying and overruling the Motion to Vacate and Set Aside Sentence, is well considered and correct. It is therefore,

Affirmed.