Richard Sympol **TOWNES**, Jr., Appellant,

v.

**UNITED STATES of America,**
Appellee.

Nos. 10574, 10865, 10866.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1966.

Decided Dec. 27, 1966.

No. 10,574.

Murray J. Janus, Richmond, Va., (Court-assigned counsel) (Bremner, Merhige, Byrne, Montgomery & Baber, Richmond, Va., on brief) for appellant.

Gerald L. Bass, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Nos. 10,865 and 10,866 submitted without argument.

Before BELL, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

In this appeal from denial of post conviction relief sought under 28 U.S.C.A. § 2255, appellant who, without counsel, pleaded guilty to two single-count indictments for robbing two banks in 1963 (18 U.S.C.A. § 2113(a)), claims that he did not effectively waive his right to counsel and that he did not competently and intelligently enter his pleas of guilty. In

part the arguments are related, because appellant relies on his psychiatric history both as a reason why the plea was not competently made and as a factor bearing upon the effectiveness of his waiver of counsel.

Appellant, at the time his pleas were entered, was a 36-year-old, married, white male, who had completed the eighth grade and who had an IQ of 114. He had previously pleaded guilty to the robbery of a bank in 1958 and he was on parole for that offense at the time of his alleged commission of the 1963 bank robberies. In the plethora of documents which he has filed with the district court he admits to robbing a fourth bank, for which he has not been prosecuted, and admits to an attempted robbery of still another bank.

The indictments to which pleas of guilty were tendered and accepted, after counsel had first been waived, charged, in Case No. 116–63, that appellant "by force and violence, and by intimidation" had robbed the First-Citizens Bank and Trust Company, Raleigh, North Carolina, of $11,334.00 on September 18, 1963, and, in Case No. 117–63, that appellant had "by force and violence, and by intimidation" robbed the North Main Street Branch, Bank of Varina, Fuquay Springs, North Carolina, of $7,938.00 on August 9, 1963. Appellant was arraigned seriatim on the two charges on November 14, 1963. He purported to waive the assistance of counsel, and his pleas of guilty were accepted after he had been interrogated, as hereafter discussed. He was sentenced November 15, 1963 to two consecutive terms of fifteen years each. The sentence in Case No. 117–63 was a straight commitment, but the sentence in Case No. 116–63 was under the provisions of 18 U.S.C.A. § 4208(a) (2). A codefendant in Case No. 117–63 who, represented by counsel, also pleaded guil-

ty, received a fifteen-year sentence under 18 U.S.C.A. § 4208(a) (2).

On June 26, 1964, appellant began a barrage of *pro se* motions in the district court seeking a new trial, reduction or correction of sentence, and withdrawal of his plea of guilty. On November 24, 1964, the district judge summarily denied all motions, and appellant appealed to this Court. In this Court, on joint motion of appellant and appellee, an order was entered remanding the case to the district court for the purpose of granting appellant a hearing under the provisions of 28 U.S.C.A. § 2255. On remand, counsel was appointed to represent appellant. Appellant was afforded a private psychiatric examination, and a plenary hearing was held before the district judge who, on December 9, 1965, filed a second written opinion and order denying all motions to vacate and set aside appellant's sentences.[1]

I

Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1958), teaches that waiver is "ordinarily an intentional relinquishment or abandonment of a known right or privilege." See also Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314, 317 (1966). The right to counsel, being secured by the Sixth and Fourteenth Amendments, is a right of constitutional magnitude. The case law requirement of waiver is implemented by Rule 44, Fed.R.Crim.P. That rule requires a district court to advise a defendant of his right to counsel, and it requires the district court to assign counsel unless an accused elects to proceed without counsel or is able to obtain counsel.

In Aiken v. United States, 296 F.2d 604 (4 Cir. 1961), we pointed out

---

1. While this appeal was pending in this Court, appellant filed a "Petition For Time Cut To Time Served" in each of the two cases in which he was convicted on his plea of guilty. These were denied August 8, 1966, and petitioner has filed two additional appeals (Nos. 10,-

865 and 10,866). Because these appeals raise no substantial issues not present in the instant case, counsel has not been appointed to prepare a separate brief and present oral argument. The appeals in Nos. 10,865 and 10,866 will be disposed of herein.

the weighty responsibility of the district courts in determining whether an accused who seeks to waive his right to counsel does so intelligently and knowingly. We said the district judge must "(1) explain the charges and the possible punishment, (2) inquire whether any threats or pressures have been brought to bear on him, and (3) determine whether any promises have been made to him by the investigating ,or prosecuting officials." We stated that little time is required to make the needed inquiry to determine whether the waiver was made voluntarily and with proper understanding, and that the best time to conduct the inquiry, as the Federal Rules of Criminal Procedure contemplate, is at the time when the right to counsel is being waived. We added, however, that failure to perform the duty does not automatically render the waiver invalid, because a defendant who seeks relief under § 2255 must still bear the burden of proving that he did not understand his constitutional rights. Aiken v. United States, supra, p. 607. Cf. Heiden v. United States, 353 F.2d 53 (9 Cir. 1965). If it appears, therefore, from the transcript of the original purported waiver, or from a preponderance of the evidence adduced at the § 2255 hearing, or a combination of both, that the waiver met the constitutional test, a § 2255 movant would not be entitled to relief. In an analogous situation where the voluntariness of a plea of guilty was attacked, we have recently held that a § 2255 motion raised a question of fact as to possible prejudice resulting from an omission of the district judge to interrogate about coercion or inducements. Brokaw v. United States, 4 Cir., 368 F.2d 508 (decided October 26, 1966). A § 2255 motion questioning the effectiveness of waiver of counsel raises similar questions of fact as to knowledge and intention.

■■■■ The transcript of appellant's arraignment proceedings, set forth in pertinent part in an appendix to this opinion, demonstrates that the minimum tests prescribed by the *Aiken* case were met. In both cases appellant was advised of the charges against him and the fact that he could be fined not more than $5,000.00 or imprisoned for not more than twenty years, or both. In each, appellant was told that he was entitled to have counsel. Of course, he should have been told that in Case No. 116–63 that if he desired counsel but was indigent, the court would appoint counsel to represent him without cost or obligation to him; but this omission in this case was harmless because he was so advised in Case No. 117–63, which was taken up immediately thereafter, and he still refused the appointment of counsel. Appellant's waiver of counsel and his tender of a plea of guilty occurred as part of the same proceeding in each of the two cases, and appellant denied that any threats or pressures had been brought to bear and that any promises had been made to him by the investigating or prosecuting officials. Particularly is this true since appellant in the first case taken up, Case No. 116–63, stated, "I have not been promised nothing or threatened in no way at all. And I have been treated I guess what you would say like a gentleman under the situation like it is." In the plenary hearing afforded him after remand, appellant offered no evidence to show that he did not understand the charges and possible punishment, nor that he had been threatened, pressured or induced to waive representation.

■■■ Appellant cites, and relies upon, United States v. Plattner, 330 F.2d 271 (2 Cir. 1964), as laying down the additional requirements that before an accused may effectively waive counsel he must be afforded a reasonable time to make his decision and he must be advised that it would be in his best interests to have a lawyer because of a lawyer's special skill and training in the law. The *Plattner* case, however, does not hold that the failure to meet these requirements necessarily results in an ineffective waiver of counsel, cf. Heiden v. United States, supra, but merely sets

forth a suggested area of colloquy between the presiding judge and an uncounseled defendant to be explored before the accused is permitted to proceed without counsel. Indeed, in *Plattner* it is said, "Our outline of the procedure to be followed is merely a restatement of the existing decisional law on the subject, made for the use and guidance of the trial judges, rather than an absolute formula to be rigidly adhered to." United States v. Plattner, supra, pp. 276–277.

▇▇ We approve of the suggested colloquy in the *Plattner* case. We agree also that an unrepresented accused should not be pressured into a hasty and ill-advised decision. Because it is the duty of a district judge to advise an accused of his right to counsel and to make certain that an accused fully understands the advice given him, we would add additional suggestions to those in the *Plattner* and *Aiken* cases, supra, to the district judges in this Circuit. The district judges should develop on the record the educational background, age and general capabilities of an accused, so that the ability of an accused to grasp, understand and decide is fully known to the judge conducting the inquiry and fully disclosed by the record. One of the reasons most usually advanced by an accused as to why he does not wish counsel to be appointed is that he is guilty and intends to plead guilty. In that event, a district judge should explain to the accused that, even if an accused's plea of guilty is accepted, counsel may be, and generally is, of substantial value in developing and presenting effectively mitigating circumstances having relevancy to what is many times the most difficult part of a criminal case—the fashioning of appropriate punishment. Depending upon the answers of a defendant to any suggested form of interrogation, additional questions to be put to him may suggest themselves. If as a result of observing the accused, or as a result of his response to any question, a question of an accused's competency to waive counsel suggests itself, the district judge should satisfy himself of competency to waive before accepting a waiver. In short, the district judge must conduct such inquiries as are necessary so that he may know, and the record may demonstrate, beyond cavil, that an accused knows that he has a right to employ and consult with an attorney and, if indigent, to have one appointed for him without expense to him, and that he voluntarily and intelligently relinquishes that right.

▇▇ But again, we reiterate our holding in *Aiken* that all of the suggested interrogation is simply a guide for establishing on the record an intentional relinquishment of the right to counsel, known and understood by an accused, and not a rigid ritual to be slavishly followed. We determine this case, and we shall determine future cases, on the basis of whether, when the record is examined as a whole, it appears that there was a waiver of a constitutional right which meets the test of *Johnson v. Zerbst*, supra, *Fay v. Noia*, supra, and *Brookhart v. Janis*, supra. In this case we conclude that the record, considered as a whole, establishes a valid waiver.

II

▇▇ In support of his claim that he did not tender his plea of guilty "voluntarily with understanding of the nature of the charge," as required by Rule 11, Fed.R.Crim.P., appellant argues that he did not understand the charge against him. Appellant did not so testify at the plenary hearing in the district court; his argument is based upon alleged intricacies of 18 U.S.C.A. § 2113. While 18 U.S.C.A. § 2113 read in its entirety might present some problem of understanding to one not schooled in the law, the indictments were based only on the first paragraph of § 2113(a) and charged, respectively, the robbery of two banks on named dates "by force and violence, and by intimidation." The record of arraignment discloses that appellant read the indictments prior to entering his plea, and that the Assistant United States Attorney summarized them. It

was shown at the § 2255 hearing that appellant told the psychiatrist who conducted a classification study for the Bureau of Prisons that he had used a toy pistol in the robberies, but that he knew that the cashiers who were robbed thought they were being threatened by a real pistol. Since the government could prevail on the indictments on proof of intimidation, without proof of actual force or violence, Price v. United States, 150 F.2d 283 (5 Cir. 1945), and cases cited therein, there is nothing in this record to belie appellant's statements at arraignment that he understood the charges against him.

The record likewise fails to provide an evidentiary basis for appellant's contention that he was so lacking in intelligence and understanding, or so much the victim of his own fears and emotions, that he could not effectively waive counsel or competently plead guilty. In his brief, appellant is specific that he does not contend that he was legally insane at the time of his trials or at any time thereafter. He relies, rather, upon a medical history which, he claims, was sufficient to demonstrate mental incompetency.

Appellant points first to blackouts, spells or convulsions he experienced in naval service in World War II, and the fact that as a child he had experienced an episode of spinal meningitis. He entered Veterans Administration hospital in Durham, North Carolina and remained there from July 17 to 29, 1957, during which he was diagnosed as having mixed neuroses and suspected grand mal epilepsy. Appellant left the hospital against medical advice. While there, the hospital director has certified appellant was not found incompetent.

Later in 1957, appellant was a patient at the Dorothea Dix Hospital, Raleigh, North Carolina, where he was referred to determine his competency to stand trial on a charge of forgery, and found to be functioning intellectually at an average level with no indications of an overt psychosis, although he appeared to be a paranoid personality who had experienced disassociative episodes in the past of fugue states. The report of the hospital concluded that he was competent to stand trial.

As a result of his first conviction for bank robbery, appellant was committed to the United States Penitentiary at Atlanta. A psychiatric report dated May 5, 1959, and a special psychiatric progress report dated January 6, 1960, were among his records. In 1959, there was no evidence of nervous or mental disorder, except the history of infrequent seizures. While the examiner was of the opinion that appellant suffered from a psychoneurosis characterized by a feeling of anxiety, uneasy feelings in his gastrointestinal tract, and infrequent periods of unconsciousness accompanied by seizures which did not seem typical of epilepsy, the examiner's conclusion was that there was no evidence to consider appellant other than responsible and competent at the time of the offense and at the time of trial. In 1960, the examiner stated, " * * * there is still no evidence of psychosis." Transfer to a medical center was not recommended because the examiner could find no evidence of a paranoid or other psychosis.

Following the remand of this appeal on motion, the district judge caused appellant to be examined by Dr. M. M. Vitols, Superintendent of the Cherry Hospital, Goldsboro, North Carolina, who also conducted a private practice and was an Assistant Professor in Psychiatry at the University of North Carolina, and certified in psychiatry by the American Board of Neurology and Psychiatry. Dr. Vitols found that appellant did not show any gross neurotic or psychotic manifestations, and in careful testing it was very evident that appellant in any legal sense was competent. Dr. Vitols' "very carefully considered opinion" was that at the time of examination, October 5, 1965, appellant was an emotionally unstable personality, i. e., " * * * a personality where the individual reacts with excitability and ineffectiveness when confronted by minor stress." Dr. Vitols added that it was his "considered

opinion" that at the time of the 1963 bank robberies appellant knew that the acts were wrong and he was capable of adhering to the right, and that he was mentally capable of cooperating in his own defense, as well as capable of forming the degree of intent, wilfulness, malice or premeditation called for by the nature of the offense charged.

Based upon this documentary proof,[2] the district judge found in his first opinion before the plenary hearing that appellant was totally competent and capable of understanding the nature of his acts and, hence, that he was competent to waive counsel. In a second opinion, after the plenary hearing, the district judge, including in his consideration the report of Dr. Vitols, and testimony adduced at the hearing, reached the same conclusion. Although not entitled to any special weight because based upon documentary proof, the district judge's findings and conclusions are not clearly erroneous.

### III

The appeals in Nos. 10,865 and 10,866 merit only summary consideration. In each, the motion to reduce sentence was filed July 29, 1966, more than two and one-half years after sentence was imposed. Prior to its recent amendment to extend the time for reduction of sentence to one hundred twenty days, the rule permitted reduction only within sixty days after the sentence was imposed. Appellant's July 29, 1966 motions were manifestly too late. Similarly appellant's effort to invoke Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), is fruitless, because Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), held *Miranda* applicable prospectively only from the date it was decided. Both appeals are thus totally lacking in merit.

Affirmed as to No. 10,574.

Appeals Dismissed in Nos. 10,865 and 10,866.

---

2. Appellant's medical history was proved by hospital and doctors' reports. The only testimony in regard to mental competency was that of appellant, who testified that he believed himself insane in 1963, but sane now.

### APPENDIX

\* \* \* \* \* \*

(November 14, 1964)

"MR. BASS: Case Number 116–63, Raleigh Division, Richard Sympol Townes, Jr.

Your Honor, he is charged in a one count bill of indictment with armed robbery of a bank of—Ridgewood (phonetic) bank of First Citizens Bank and Trust Company and at this time we would furnish the defendant with a copy of the bill of indictment.

The maximum penalty as provided by law is a fine of not more than $5,000.00 or imprisonment for not more than twenty years or both.

COURT: Your [sic] are Richard Sympol Townes, Jr.?

MR. TOWNES: Yes, sir.

COURT: Well, Mr. Townes, what is your age?

MR. TOWNES: Thirty-six.

COURT: What was your home address?

MR. TOWNES: 709 Person Street, Raleigh, North Carolina.

COURT: And do you have an attorney?

MR. TOWNES: No, sir.

COURT: Do you wish to have an attorney to represent you in this matter?

MR. TOWNES: No, sir. I decline.

COURT: You understand that you are entitled as a matter of right to the assistance of counsel but that you may waive that right?

MR. TOWNES: Yes, sir.

COURT: If you understand it.

MR. TOWNES: Yes, sir.

COURT: You do understand the nature of the charge, do you not?

MR. TOWNES: Yes, sir.

COURT: Now, the United States Attorney has just informed you as to the possible maximum penalties that the court may impose. Do you understand that?

MR. TOWNES: Yes, sir.

COURT: Very well. Let the record show that the defendant intelligently and competently and with understanding on his part waives his right to the assistance of counsel.

Now you may be seated.

COURT: Have you completed your arraignment, Mr. United States Attorney?

MR. BASS: Yes, sir, we have, Your Honor.

COURT: Mr. Townes, take just a moment there to read the copy of the indictment there.

MR. TOWNES: I have read it.

COURT: You have read it?

MR. TOWNES: I have, yes, sir.

COURT: Well, do you understand it?

MR. TOWNES: Yes, sir.

COURT: Well, are you prepared to plead at this time to the charge?

MR. TOWNES: I plead guilty, Your Honor.

COURT: Now, upon your plea of guilty, has anyone threatened you in any manner or frightened you in any way or coerced you into entering this plea of guilty?

MR. TOWNES: No, sir.

COURT: No one from the Government, the Federal Bureau of Investigation, the United States Attorney's Office or anyone else has promised you any reward or hope of reward if you would plead guilty?

MR. TOWNES: I have not been promised nothing or threatened in no way at all.

And I have been treated I guess what you would say like a gentleman under the situation like it is.

COURT: Yes, sir. Very well. Then you make this plea freely and voluntarily?

MR. TOWNES: Yes, sir.

COURT: Let his plea of guilty be recorded." (Transcript, 39, 40, 41, 42.)

\*  \*  \*  \*  \*  \*  \*

(November 14, 1964)

"MR. BASS: Your Honor, there is another case also pending against Mr. Townes.

COURT: All right, sir.

MR. BASS: Would you like to proceed with the arraignment of Mr. Townes in that case?

COURT: Yes, sir.

MR. BASS: This is case Number 117–63, Raleigh Division, United States versus Richard Sympol Townes, Jr. and Peyton Maurice Daughtry.

Daughtry is not here, Your Honor. He is represented by counsel, by Mr. J. C. Keeter from Raleigh who has informed us that he will be here tomorrow for the arraignment of the man he represents.

So we will complete it as to Townes, Your Honor.

In this case, Your Honor, he is charged in a one count bill of indictment with robbing the—armed robbery of the Bank of Varina, Fuquay Springs, North Carolina, on August 9, 1963.

The amount of money taken in the robbery was $7,938.00.

The maximum penalty as provided by law in this case is a fine of not more than five thousand dollars or imprisonment for not more than twenty years or both.

At this time, Your Honor, we are going to furnish the defendant with a copy of the bill of indictment.

COURT: All right, sir. For the record, Mr. Townes, Richard Sympol Townes, Jr., you are thirty-six years of age and you live at 703 North Person Street?

MR. TOWNE: 709, sir.

COURT: Excuse me. 709 North Person Street in Raleigh.

Now do you wish to have the assistance of counsel in this case?

MR. TOWNES: No, sir.

COURT: You understand, Mr. Townes again that in this case as in every case a defendant is entitled as a matter of right to the assistance of counsel but that a defendant may waive that right?

MR. TOWNES: Yes, sir.

COURT: You also understand that if the defendant is unable to employ counsel that the court may appoint counsel to represent him and will appoint counsel to represent him?

MR. TOWNES: Yes, sir.

COURT: What do you wish to do?

MR. TOWNES: I waive that, sir.

COURT: All right, sir. Let the record show that the defendant competently and intelligently and with understanding on his part waives his right to the assistance of counsel in this case.

Now, have you had an opportunity to read the charge?

MR. TOWNES: Yes, sir.

COURT: Do you understand that in this case you are charged with armed robbery of the Bank of Varina at Fuquay Springs, I believe?

MR. TOWNES: Yes, sir.

COURT: Now, do you understand the possible maximum penalty that the court may impose?

MR. TOWNES: Yes, sir, I do.

COURT: Are you prepared to plead to this charge?

MR. TOWNES: I plead guilty to that, sir.

COURT: Now, in this case has anyone frightened you in any manner, threatened you in any way or coerced you into entering a plea of guilty?

MR. TOWNES: No, sir, they have not.

COURT: Has anyone promised you any reward by way of leniency of the court or anything of that nature?

MR. TOWNES: No, sir.

COURT: And you make this plea freely and voluntarily?

MR. TOWNES: Yes, sir.

COURT: Very well. Let his plea of guilty be recorded in this instance." (Transcript, 47, 47, 49, 50)

CRAVEN, Circuit Judge (concurring):

Unquestionably, the "additional suggestions" to the district judges in the majority opinion are permissible extrapolations of Rules 11 and 44.[1] Even so, I have some hesitation in joining in further suggestions to the district judges. What is contained in the rules[2] and in

---

1. Although the Supreme Court has never told the district judges precisely *how* they are to perform their duty under Rule 44, Mr. Justice Black, speaking for four members of Court, in Von Moltke v. Gillies, spoke of its extent and nature:

"To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate *as long and as thoroughly as the circumstances of the case before him demand.* The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." 332 U.S. 708, 723, 68 S.Ct.

316, 323, 92 L.Ed.2d 309 (1948). (Emphasis added.)

2. Rule 11 reads as follows:
"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."
Rule 44 reads as follows:
"(a) *Right to Assigned Counsel.* Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment.
"(b) *Assignment Procedure.* The procedures for implementing the right set

prior decisions [3] seems to me sufficient. Every case is different, and the circumstances of one may demand much more inquiry than does another.

Extended colloquy between court and defendant is not the *only* way the judge can sufficiently investigate the circumstances.[4]

The Fifth Circuit has "repeatedly stated that determination by the trial court that the plea was made voluntarily need not comply with any set formula." [5]

The Sixth Circuit has said that "[i]n order to comply with * * * rule [11] the District Court need not follow any particular ritual" and has suggested that "[a] brief discussion with the defendant regarding the nature of the charges may normally be the simplest and most direct means of ascertaining the state of his knowledge." [6]

The Seventh Circuit has made the same suggestion, but also notes that "there may be other circumstances from which it is evident that the defendant has the requisite understanding." [7]

The Eighth Circuit has said that Rule 11 "does not prescribe, or even suggest, a particular technique or procedure * *. It would appear to be necessary—but also sufficient—that the trial judge reach the imperative conclusion by any rational means appropriate to the setting which evokes it." [8] The Eighth Circuit has also said that the trial judge, in the course of discharging his duty under Rule 11, "is entitled to consider all of the information that has been presented to the defendant from whatever source, including his counsel, statements made in open court proceedings, personal knowledge of the defendant, and any other factor that would have any relationship to the plea. No particular rote or ritual need be observed by the trial court." [9]

The Ninth Circuit has said "the court is not required to follow any particular ritual, and it is not necessary that the court *personally explain* to the defendant the nature of the charge." [10]

The Tenth Circuit has said that "Rule 11 does not require any ritualistic ceremonial. A sentencing court does not have to conduct a hearing and make a finding showing compliance with the rule before accepting any guilty plea." [11]

One trouble with appellate court suggestions to trial judges is that they tend to become what is genuinely disclaimed in the majority opinion: "a rigid ritual to be slavishly followed."

Since we establish no ritual or rule of procedure and leave to the ingenuity of the district judges ways and means of compliance with Rules 11 and 44, I am persuaded to join my colleagues in the suggestions offered.

out in subdivision (a) shall be those provided by law and by local rules of court established pursuant thereto.

3. For example, we quite recently said in White v. Pepersack, 352 F.2d 470, 472 (4th Cir. 1965), that a guilty plea is acceptable "only after a searching inquiry to assure that its tender is voluntary."

4. It might not even be the best way. Too much colloquy under Rule 44 could be self-incriminating, e. g., an alleged counterfeiter who responds to inquiry that he is a printer by trade.

5. Floyd v. United States, 260 F.2d 910, 912 (5th Cir. 1958). See also Johnson v. United States, 344 F.2d 401, 403–404 (5th Cir. 1965) which is in accord in respect to waiver of counsel.

6. Julian v. United States, 236 F.2d 155, 158 (6th Cir. 1956).

7. United States v. Davis, 212 F.2d 264, 267 (7th Cir. 1954); accord, Hobbs v. United States, 340 F.2d 848, 851 (7th Cir. 1965).

8. Smith v. United States, 339 F.2d 519, 527 (8th Cir. 1964).

9. Bartlett v. United States, 354 F.2d 745, 751 (8th Cir. 1966).

10. Munich v. United States, 337 F.2d 356, 359 (9th Cir. 1964). (Emphasis added.)

11. Nunley v. United States, 294 F.2d 579, 580 (10th Cir. 1961).