UNITED STATES of America, Appellee,

v.

Raphael PLATTNER, Defendant-Appellant.

No. 166, Docket 28377.

United States Court of Appeals Second Circuit.

Submitted Nov. 18, 1963.

Decided March 31, 1964.

272

Donald F. McCaffrey, Asst. U. S. Atty., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty., for Eastern Dist. of New York, Brooklyn, N. Y., on the brief), for appellee.

Raphael Plattner, defendant-appellant, pro se.

Before MEDINA, WATERMAN and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge:

Upon his plea of guilty before Judge Abruzzo in the United States District Court for the Eastern District of New York, Raphael Plattner was convicted of transporting in interstate commerce a stolen motor vehicle in violation of Title 18, U.S.C. §§ 2 and 2312, and on June 20, 1957, he was sentenced to imprisonment for two and one-half years. Neither at the time of sentencing nor in the judgment of conviction was any statement made to the effect that the term of imprisonment would run concurrently with the state prison sentences then being served by Plattner. After failing, in 1961, to obtain a mandamus directing that the federal sentence be served concurrently with the state sentences, Plattner, on May 8, 1962, filed a petition for a writ of error *coram nobis*, alleging that

his plea of guilty had been induced by a promise of the prosecutor, an Assistant United States Attorney, that Plattner would either receive a suspended sentence or a direction that the federal and state sentences be served concurrently. The relief sought was resentencing in accordance with the alleged promise or, alternatively, for leave to withdraw the original plea of guilty. On May 14, 1962, Judge Abruzzo granted a hearing, to be held on June 26, 1962 and, without the knowledge or consent of Plattner, assigned an attorney to represent him. In letters to the Clerk of the District Court, dated May 15, and May 19, 1962, Plattner requested permission to appear at the hearing personally. He explained: "Who will testify in my stead? Who is to summon and examine my witnesses? How, in my absence, is it possible to adequately cross-examine the Government's witnesses?"

At the hearing on June 26, 1962, assigned counsel for Plattner, in order to obtain time to interview witnesses, requested and was granted an adjournment to July 16, 1962. However, his request that Plattner be permitted to remain in Federal Detention Headquarters so that he would be accessible for consultation was denied, and Plattner was ordered returned to the State Prison in Auburn, New York. Plattner alleges that he then requested the Court to relieve assigned counsel and to allow him to represent himself in all the future *coram nobis* proceedings. We are informed that the Court Reporter took no notes of what was said at the hearing on June 26, 1962, but it sufficiently appears in the record

before us, and is not disputed, that Plattner "expressed the desire to be his own counsel," but the Court "thereupon appointed counsel from Legal Aid to represent him because petitioner was not schooled in the law."

After a trial of the issues the Court held against Plattner, his petition for the writ of error *coram nobis* was dismissed, and Plattner appeals. There was no opinion below, other than a brief statement that the Court did not believe the testimony of Plattner and his witnesses.

I

■ As we hold that a defendant on the trial of a criminal case, including a *coram nobis* proceeding at which the defendant is present and witnesses are to be examined and cross-examined,[1] has a right to conduct and manage his own case *pro se,* we reverse the order appealed from and remand the case. Moreover, we hold the right to act *pro se* as above stated is a right arising out of the Federal Constitution and not the mere product of legislation or judicial decision. Thus we would be required to remand the case, even if no prejudice to Plattner were shown to have resulted from the refusal to permit him to act *pro se.*[2]

■ Under the Fifth Amendment, no person may be deprived of liberty without due process of law. Minimum requirements of due process in federal criminal trials are set forth in the Sixth Amendment. They include the right of the accused to be informed personally

1. See United States v. Hayman, 1952, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232; United States v. Morgan, 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248; United States v. Pisciotta, 2 Cir., 1952, 199 F. 2d 603; Winhoven v. United States, 9 Cir., 1952, 201 F.2d 174.

2. See Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Coplon v. United States, D.C.Cir.1951, 89 U.S.App.D.C. 103, 191 F.2d 749, 758–760, cert. denied, 1952, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690; United States

ex rel. Cooper v. Denno, 2 Cir., 1955, 221 F.2d 626, 628, 631 (Judge Frank concurring), cert. denied, 349 U.S. 968, 75 S.Ct. 906, 99 L.Ed. 1289; Fina v. United States, 10 Cir., 1931, 46 F.2d 643; WJR, The Goodwill Station, Inc. v. Federal Communications Commission, D.C.Cir., 1948, 84 U.S.App.D.C. 1, 174 F.2d 226, 241, rev'd on other grounds, 1949, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353. See also Kotteakos v. United States, 1946, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557.

of the accusation, to be confronted by witnesses against him, and to have compulsory process for obtaining witnesses in his favor. Implicit in both amendments is the right of the accused personally to manage and conduct his own defense in a criminal case.

The framers of the Sixth Amendment recognized that a defendant in a criminal case is not likely to be sufficiently learned in the law effectively to assert all of his guaranteed rights.[3] They understood that excessive emotional involvement in the outcome of his case might paralyze the accused in his ability to organize his defense, examine and cross-examine witnesses, and present cogent argument in support of his cause.[4] Therefore, to buttress and supplement all the other rights of a defendant charged with crime, the final clause of the Sixth Amendment protects the right of the accused "to have the Assistance of Counsel for his defence."

This safeguard was surely not intended to limit in any way the absolute and primary right to conduct one's own defense *in propria persona*. Nor is the existence of this right made doubtful by the circumstance that the now all but universal requirement of the assignment of counsel to indigent defendants[5] is the development of a later generation and more enlightened views. Indeed, and strangely enough, there would probably have been no denial of Plattner's right to act *pro se* had the Court not been so accustomed in these recent years to assign Legal Aid counsel or other lawyers to defend those indigent defendants who had no means to pay counsel of their own choosing.

Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92 (1789), passed by the First Congress and signed by President Washington one day before the same Congress was to propose the Sixth Amendment, provided "[t]hat in all the courts of the United States, *the parties may plead and manage their own causes personally* or by the assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct causes therein." (Emphasis supplied.) This statute gives more elaborate expression to the meaning of the terse language of the Bill of Rights and indicates, we think, that the Constitutional right to "the assistance of counsel" was intended to include the right of defendants in criminal cases "to plead and manage their own causes personally." This part of the original Judiciary Act of 1789, in substantially the same language, is now embodied in 28 U.S.C., § 1654.

3. See Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Powell v. State of Alabama, 1932, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158.

4. See 5 Macaulay's History of England 94 ("The World's Classics" ed. 1931). Macaulay gives the following account of Anthony Ashley Cooper's maiden speech in Parliament supporting the act of 1696 allowing counsel to the accused in cases of treason: "In the course of his speech he faltered, stammered, and seemed to lose the thread of his reasoning. The House, then, as now, indulgent to novices, and then, as now, well aware that, on a first appearance, the hesitation which is the effect of modesty and sensibility is quite as promising a sign as volubility of utterance and ease of manner, encouraged him to proceed. 'How can I, Sir,' said the young orator, recovering himself, 'produce a stronger argument in favour of this bill than my own failure? My fortune, my character, my life, are not at stake. I am speaking to an audience whose kindness might well inspire me with courage. And yet, from mere nervousness, from mere want of practice in addressing large assemblies, I have lost my recollection: I am unable to go on with my argument. How helpless, then, must be a poor man who, never having opened his lips in public, is called upon to reply, without a moment's preparation, to the ablest and most experienced advocates in the kingdom, and whose faculties are paralysed by the thought that, if he fails to convince his hearers, he will in a few hours die on a gallows, and leave beggary and infamy to those who are dearest to him!' "

5. See Fed.R.Crim.P. 44; Johnson v. Zerbst, supra, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; cf. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

Rule 44 of The Federal Rules of Criminal Procedure, according to the Notes of the Advisory Committee on Rules, "is a restatement of existing law in regard to the defendant's constitutional right of counsel," and it parallels 28 U.S.C. § 1654, and provides that "If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding *unless he elects to proceed without counsel* or is able to obtain counsel." (Emphasis supplied.) Thus, the continued vitality of the Constitutional right to conduct one's own defense without the intervention of an assigned attorney is reaffirmed in the statutes and rules now in force.

We also note: six state constitutions guarantee that the accused in a criminal prosecution shall have a right to be heard either by himself or by counsel or both; [6] twenty-seven protect the right of an accused to be heard, or to defend, in person *and* by counsel; [7] four provide for the right to appear and defend in person *or* by counsel.[8] Thus, thirty-seven states place the right to proceed *pro se* on a constitutional level.[9]

In Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268, the Supreme Court stated that "The right to the assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. * * * Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. Johnson v. Zerbst, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024, 82 L. Ed. 1461." The Supreme Court again referred to the defendant's "recognized privilege of conducting his own defense at the trial" in Price v. Johnston, 1948, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356.

## II

It is not enough, however, to hold and decide that the right to defend *pro se* is a constitutionally protected right. The varied circumstances of the large number of cases now pouring in upon us with increasing volume makes it apparent that there should be a critical survey of the problem and a statement of the method of procedure to be followed by the trial judges in cases of indigent defendants, when dealing with the subject of who is to manage and conduct their defense.

In many cases of this type coming before appellate courts the record of the colloquy between the Court and the accused, on the subject of who is to conduct the defense, is fragmentary or non-existent. But for the praiseworthy attitude of the United States Attorney for the Eastern District of New York in this

6. Ala.Const. Art. 1, Section 6; Fla.Const. Declaration of Rights, Section 11, F.S.A.; Me.Const. Art. 1, Section 6; Miss.Const. Art. 3, Section 26; Tex.Const. Art. 1, Section 8; S.C.Const. Art. 1, Section 18.

7. Ariz.Const. Art. 2, Section 24, A.R.S.; Ark.Const. Art. 2, Section 10; Cal.Const. Art. 1, Section 13; Colo.Const. Art. 2, Section 16; Conn.Const. Art. 1, Section 9; Del.Const. Art. 1, Section 7 Del.C. Ann.; Idaho Const. Art. 1, Section 13; Ill.Const. Art. 2, Section 9; Ind.Const. Art. 1, Section 13; Ky.Const. Bill of Rights, Section 11; Mo.Const. Art. 1, Section 18(a), V.A.M.S.; Mont.Const. Art. 3, Section 16; Nev.Const. Art. 1, Section 18; N.H.Const. Bill of Rights, Art. 15; N.M.Const. Art. 2, Section 23; N.Y.Const. Art. 1, Section 6; N.D.Const. Art. 1, Section 13; Ohio Const. Art. 1, Section 10; Okla.Const. Art. 2, Section 20; Ore.Const. Art. 1, Section 11; Pa. Const. Art. 1, Section 8 P.S.; S.D.Const. Art. 6, Section 7; Tenn.Const. Art. 1, Section 9; Utah Const. Art. 1, Section 10; Vt.Const. Chapter 1, Art. 10; Wis. Const. Art. 1, Section 7; Wyo.Const. Art. 1, Section 10. See also, La.Const. Art. 1, Section 9.

8. Kan.Const. Bill of Rights, Section 10; Mass.Const. Part 1, Art. 12; Neb.Const. Art. 1, Section 11; Wash.Const. Art. 1, Section 22.

9. See generally Beany, Right to Counsel, 209, 237 (1955); Annot., 77 A.L.R.2d 1233 (1961).

case of Plattner, in not disputing and in effect conceding that Plattner's request to be allowed to defend *pro se* was summarily denied and counsel assigned, we would have been required to hold our decision in abeyance on the appeal from the order dismissing the writ until after a remand for a reconstruction of the record,[10] with all the attendant delay and expense. It is not too much, we think, to require that the Court Reporter make a record of whatever is said on the subject of representation, even if the subject is discussed at a series of hearings.

Moreover, one of the by-products of the recent developments in the law relative to the assignment of counsel in all but a few of the cases of indigent defendants, has been an awareness by the prison population and a very considerable number of persons who may in the course of time add to the prison population, of the possibility of manipulating the basic rule in a fashion such as to produce a record of confusion on the subject, and to give the accused the opportunity to claim a reversal in the event of conviction on the ground that his rights under the Fifth and Sixth Amendments had been infringed. The ingenuity of these individuals, especially the recidivists, betokens a high if misdirected intelligence. This case would seem to provide a background against which some fundamental principles may be sketched.

The right to counsel and the right to defend *pro se* in criminal cases form a single, inseparable bundle of rights, two fases of the same coin. Thus we find the choice between the two sometimes discussed in terms of a waiver of the right to counsel, and sometimes in terms of an election to have a lawyer or to defend *pro se*. Viewed in this light the problem is simplicity itself.

■■ Accordingly, in all cases of this type, no matter how the indigent or other defendant may phrase his prayer for action by the Court, it is incumbent upon the presiding judge, by recorded colloquy with the defendant, to explain to the defendant: that he has the choice between defense by a lawyer and defense *pro se;* that, if he has no means to retain a lawyer of his own choice, the judge will assign a lawyer to defend him, without expense or obligation to him; that he will be given a reasonable time within which to make the choice; that it is advisable to have a lawyer, because of his special skill and training in the law and that the judge believes it is in the best interest of the defendant to have a lawyer, but that he may, if he elects to do so, waive his right to a lawyer and conduct and manage his defense himself. If the result is a waiver of the right to counsel and an election to defend *pro se,* the presiding judge should conduct some sort of inquiry bearing upon the defendant's capacity to make an intelligent choice. In other words, there must be a record sufficient to establish to our satisfaction that the defendant "knows what he is doing and his choice is made with eyes open."

This is not to say that we will not in the future as in the past examine the records in this type of case as they come before us and piece together the circumstances of each case, and the statements by the Court and the defendant in each of them to see whether there is a proper showing, on the record taken as a whole, that the defendant made his waiver of the right to counsel or his election to conduct his defense *pro se* with knowledge of what he was doing and with his eyes open. In such cases statements by defendants, made after the decision to assign counsel or not to assign counsel has been made, constitute admissions to be given due consideration on the issue of whether or not the defendant knew what he was doing. Our outline of the procedure to be followed is merely a restatement of the existing decisional law on the subject, made for the use and guidance of the trial judges, rather than

10. This procedure is authorized by 28 U.S.C. § 2106. See also Macomber v. Gladden, 9 Cir., 1962, 304 F.2d 487; Brown v. United States, 9 Cir., 1963, 314 F.2d 293; United States v. Taylor, 4 Cir., 1962, 303 F.2d 165.

an absolute formula to be rigidly adhered to.

We do not reach the case where a defendant in the midst of a criminal trial seeks to dismiss his lawyer and for the balance of the trial manage and conduct his own defense *pro se*. Prior rulings by this Court in several cases involving this problem do not, we think, squarely touch the principles to which we adhere in the case now before us. United States v. Mitchell, 2 Cir., 1943, 137 F.2d 1006, cert. denied, 1944, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083; United States v. Gutterman, 2 Cir., 1945, 147 F.2d 540, 157 A.L.R. 1221; United States v. Cantor, 2 Cir., 1954, 217 F.2d 536; United States v. Private Brands, Inc., 2 Cir., 1957, 250 F.2d 554, cert. denied, 1958, 355 U.S. 957, 78 S.Ct. 542, 2 L.Ed.2d 532. In the earliest of these cases, United States v. Mitchell, there was a demand by Mitchell at the outset of the trial that he be permitted to defend *pro se*, although the principal point discussed in the majority opinion had to do with the dismissal of counsel in mid-trial. If anything said in Mitchell or the other cases above cited be deemed in conflict with our holding in the case now before us, we disagree with it.

### III

As there is a possibility that this decision may be reviewed, and for the sake of completeness, we think we should briefly discuss circumstances not as yet referred to that bear upon the question of whether or not the denial of Plattner's request to be permitted to defend *pro se* prejudiced his rights at the hearing on July 16, 1962. We think the ruling was prejudicial.

We have no criticism of the fact that assigned counsel asked only three rather perfunctory questions on cross-examination of the prosecutor who was alleged to have made the promise Plattner said he relied on. He may well have thought, from the questions already asked by the trial judge, that an exhaustive cross-examination would have served no useful purpose. On the other hand, it is abundantly clear that Plattner, quite evidently both intelligent and articulate, would have probed deeper had he been given an opportunity to conduct the cross-examination himself. At least he had intimate knowledge of the facts, as all the conversations he relied on were had by him personally with the prosecutor or others. He claimed to have spent the greater part of a day conferring with the prosecutor on the subject of the plea of guilty the prosecutor was seeking to obtain. He says they had luncheon together and various telephone conversations were had. The result was, according to Plattner, that he prevailed upon one of the co-defendants to join him in pleading guilty. Before Plattner and this co-defendant were sentenced the trial of the other co-defendants was commenced and Plattner was called as a Government witness. His testimony must have differed considerably from what he said on the day he was sentenced. In any event, the case against the other defendants was dismissed. A vigorous cross-examination might well have made the alleged promise seem more plausible than it does on the record now before us. Plattner may have thought that a full record would help his chances on appeal. Perhaps the result would have been the same, but that may be said in any case where we reverse for error and remand for a new trial. We think there is a sufficient showing of prejudice.

As Judge Abruzzo has already found Plattner unworthy of belief, the proceedings on the remand should be conducted by some other judge.

Reversed and remanded.

MARSHALL, Circuit Judge (concurring):

While I agree with Parts I and II of the opinion and am sure that on remand the admonitions in Part II will be carefully followed, I am not certain of the conclusions drawn in Part III of the opinion.