John Lee ARNOLD, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 22546.

United States Court of Appeals
Ninth Circuit.

Aug. 1, 1969.

Normand B. Hendricks (argued), Walnut Creek, Cal., for appellant.

Eric Nobles (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

Appellant, John Lee Arnold, was indicted by the Federal Grand Jury for the Central District of California on November 30, 1966. The indictment was in two counts and charged the defendant with robbery of the United California Bank, Wilshire-Catalina Office, on October 5, 1966, and the robbery of the Mission National Bank of Los Angeles on October 11, 1966. The count involving Mission National Bank included a charge that the defendant forced an individual in the bank to accompany him without his consent. Arnold was arraigned on July 31, 1967, the Court appointed Mario Gonzalez as counsel for the defendant, the defendant pleaded not guilty as charged in both counts, and the case was set for jury trial on September 19, 1967.

On September 19, 1967, the defendant moved to discharge his attorney as his counsel of record and the Court granted the motion and relieved Mr. Gonzalez.

On the same date, a jury trial commenced, and on September 20, 1967, the jury returned with a verdict of guilty on both Counts. The jury did not impose the death penalty.

On October 31, 1967, the Court ordered the defendant committed to the custody of the Attorney General for a period of twenty-one years on Count One, and twenty-one years on Count Two, with the sentence on Count Two to run concurrently with Count One. On October 31, 1967, the defendant filed his notice of appeal to the United States Court of Appeals for the Ninth Circuit.

On March 19, 1968, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, the Court corrected the initial sentence from twenty-one years to twenty years on Count One.

It is first contended by defendant (Appellant) that he did not make an intelligent and competent waiver of his right to counsel before his unsuccessful in propria persona management of his jury trial. The record before us does not support this contention. From some time before the arraignment and entry of plea until the morning of the commencement of the trial, defendant was represented by court-appointed counsel

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

with whose services he declared himself to be completely satisfied. He, nevertheless, in every conference with his attorney, told the latter that he would prefer not to be represented by counsel, and on the morning of the trial, defendant insisted in open court that he be permitted to represent himself, explaining that he had been "burnt" twice with court-appointed counsel and had been studying law continuously for a year in Leavenworth Penitentiary. He even declined to accept the Court's offer to have counsel present to advise and assist him in his personal conduct of his own defense. Without detailing the colloquy between Court, counsel and the defendant, which consumed approximately two hours it is enough to observe that the trial court adequately advised the defendant of his rights and granted defendant's motion to dismiss the attorney with expressed reluctance.

Defendant, through court-appointed counsel on appeal, attacks the proceedings as inadequate under Von Moltke ¯v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, quoting:

> "To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

 Specifically, the complaint is that the trial court neglected to advise defendant of the possible defense of insanity, although there was nothing in the record at that time to suggest the possibility of such a defense. The *Von Moltke* case suggests a standard of perfection. Applied literally, there could

never be a competent waiver of the assistance of counsel inasmuch as few, if any, judges, and perhaps not even lawyers, could deliver an impromptu dissertation in every case covering all possible included offenses, the range of allowable punishments, all possible defenses to the charges and circumstances in mitigation thereof. We view the language of the *Von Moltke* opinion as directory to the trial courts, emphasizing the importance of careful inquiry before a waiver of the assistance of counsel is accepted. Hodge v. United States, 9th Cir., 414 F.2d 1040, en banc, decided July 3, 1969. Cf. United States v. Plattner, 1964, 2 Cir., 330 F.2d 271. It does not require a hypothetical lecture on criminal law for the edification of the defendant. It is sufficient if basic rights appearing from the then record before the court are discussed. The careful interrogation by the trial court in this case more than fulfilled its obligation.

Of course, *Von Moltke* came before the Supreme Court on conviction after a plea of guilty entered without advice of counsel. When such a plea is tendered, the trial court has an opportunity to explore and understand the possibilities by interrogation of the defendant to find a factual basis for the tendered plea. Rule 11, Federal Rules of Criminal Procedure. This opportunity is not present when a not guilty plea is entered. Hodge v. United States, 9th Cir., 414 F.2d 1040, en banc, decided July 3, 1969.

 A defendant in a criminal case not only has a constitutional right to the assistance of counsel, he has a correlative constitutional right to refuse the advice or interference of counsel and to present his own case. A court has no more right to force an attorney on a defendant than it has to ignore the Sixth Amendment right to counsel. Adams v. United States, ex rel. McCann, 1942, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268; Duke v. United States, 9th Cir. 1958, 255 F.2d 721; United States v. Plattner, 2nd Cir. 1964, 330 F.2d 271. Cf. Bayless v. United States, 9th Cir.

1967, 381 F.2d 67. In this case, the defendant freely and intelligently elected "to follow the guidance of his own wisdom, and not that of a lawyer." Adams v. United States, supra. This was his right.

■ In the Reply Brief, Appellant contends that (assuming an intelligent and voluntary waiver of counsel at the trial) there was no waiver of the assistance of counsel in the sentencing proceedings, citing Chessman v. Teets, 1957, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253, and Mempa v. Rhay, 1967, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336. While it is true that the Sixth Amendment right to counsel applies at all critical stages of the prosecution, including the sentencing stage, it does not follow that once the assistance of counsel in court has been competently waived, a new waiver must be obtained at every subsequent court appearance by the defendant. A competent election by the defendant to represent himself and to decline the assistance of counsel once made before the court carries forward through all further proceedings in that case unless appointment of counsel for subsequent proceedings is expressly requested by the defendant or there are circumstances which suggest that the waiver was limited to a particular stage of the proceedings. Cf. Chessman v. Teets, supra; Hodge v. United States, supra.[1]

■ Defendant also argues that his incompetence to waive counsel is demonstrated by his trial tactics. The United States Attorney sought, in the morning session (the selection of the jury commenced in the afternoon), to dismiss that portion of the second count of the indictment which invoked a possible death penalty, that is, the allegation: "In committing the offense heretofore charged, defendant John Lee Arnold did force Hector Mokhearian, without his consent, to accompany him." This trial occurred before the death penalty provision of 18 U.S.C. § 2113(e) had been declared unconstitutional. See: Pope v. United States, 1968, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317. The trial court correctly ruled that a material portion of a charge or count of an indictment could not be stricken.[2] (Cf. Heisler v. United States, 1968, 9 Cir., 394 F.2d 692) and a discussion ensued regarding the possibility of a superseding indictment or a superseding information. The defendant, after being fully informed, not only by the court but also in private conference with his attorney who had not yet been discharged, refused against the advice of his attorney to sign the necessary waiver so that a superseding information eliminating the death penalty possibility could be filed. It was defendant's tactic throughout the trial, shown not only by this incident but by others, including his argument to the jury,[3] to seek to place the jurors in a position of voting either for capital punishment or an acquittal. On appeal, defendant argues: "In his seemingly pathological refusal to permit the portion

1. We do not imply that the converse is necessarily true in all circumstances, that is, that a defendant has the right to disrupt orderly procedure by demanding counsel, for example, in the middle of a trial which he has insisted on conducting in propria persona.

2. The presumed objective of the United States Attorney could easily have been attained if he had simply neglected to offer evidence in support of the aggravation allegation of the indictment. Salinger v. United States, 1926, 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398.

3. "Mr. Arnold: Ladies and gentlemen of the jury, I am not a lawyer, and I know nothing about the law. But the reason the U.S. Attorney is saying that he doesn't ask the death penalty is due to play on your sympathy to find me guilty. I think with all fairness to me, and to the U.S. Attorney, you either find me completely guilty, and find the maximum penalty, or you find me innocent. Because he is playing on that sympathy as he has said to you. They are not asking the death penalty. Now why? You either find me guilty, and I think you should, if you think they produce me guilty, fine. You should go all the way. If you find me innocent, you should give me an acquittal. There is no two ways about it. That is my only hope and desire."

of Count Two involving the death penalty to be dropped from the indictment, the fact is that appellant did not adequately represent himself. Any attorney who counseled his client to resist an offer of dismissal of a count involving the death penalty would be and should be disbarred as incompetent to further practice law." This may not be so patent as it appears at first blush. Employment of the psychology of attempting to position a person so that he has to make a difficult or unconscionable choice is an everyday occurrence. The writer of this opinion has twice had the experience of having defendants who were represented by quite competent counsel refuse the court's proffered instruction on a lesser included offense in pursuance of the same all or nothing psychology. Errors of judgment exemplify neither incompetence nor inadequate representation. The defendant was not materially prejudiced by his strategy because the jury did not vote for capital punishment, although some slight prejudice is arguable inasmuch as the sentence on the second count was twenty-one years under 18 U.S.C. § 2113(e). If a superseding information had been filed, the maximum possible penalty under Count Two would have been twenty years' imprisonment (18 U.S.C. § 2113(a)). The Court's refusal to grant a continuance, as suggested by the Government—not the defendant—to permit a superseding indictment to be obtained was not an abuse of discretion and is not a ruling of which defendant may complain in these circumstances.

■ Finally, defendant has lodged with the Court and has moved that the Court consider as part of the record on appeal institutional records tending to demonstrate the defendant's earlier history of mental illness or emotional instability. These include army discharge records and records from the United States Medical Center at Springfield, Missouri, and from the Central State Psychiatric Hospital in Nashville, Tennessee. The proffered documents are not properly a part of the record on this appeal. They were never tendered to the trial court. The first indication of a problem of this sort came to the attention of the trial court when defendant appeared for sentencing and claimed he was suffering from epilepsy. The Court committed him to the federal facility at Terminal Island, California, and sentenced him only after receiving a report that he was in good physical condition and satisfactory mental condition.

We express no opinion on the impact of the supplemental records in support of defendant's contention that he was mentally incompetent to waive the assistance of counsel. It is not an issue on this appeal. Adequate procedures are available to present the contention under 28 U.S.C. § 2255, if defendant is so advised.

Affirmed.