**Jose Juan SOTO**

v.

**UNITED STATES of America.**

**Civ. A. No. 73–1410.**

United States District Court,
E. D. Pennsylvania.

Nov. 15, 1973.

Jose Juan Soto, pro se.

Robert N. deLuca, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Jose Juan Soto was convicted on charges of aiding and abetting the sale of heroin, in violation of 26 U.S.C. §§ 4704, 4705 and 18 U.S.C. § 2. He was given concurrent sentences of five years imprisonment on one count of the indictment and two years on another. Soto has filed this petition under 28 U.S.C. § 2255[1] to vacate or set aside the sentences on the ground that the court violated his constitutional and statutory rights by requiring him to proceed to trial represented by two court-appointed attor-

neys, after he had expressed dissatisfaction with their representation.

Soto, along with three other persons, was indicted by a federal grand jury on April 29, 1971, on various charges relating to the sale of heroin.[2] On August 4, 1971, the court appointed Mrs. Marilyn Mauskopf to represent Soto. A short time later, Aaron D. Blumberg, an associate of Mrs. Mauskopf in the firm of Pepper, Hamilton and Scheetz, joined her in representing Soto[3] and they worked together thereafter. During the ten months' period between appointment and trial, counsel filed several significant pretrial motions which they argued and in support of which they filed memoranda of law. They attacked, *inter alia*, the "bare bones" nature of the indictment, and requested the minutes of the proceeding before the grand jury and the production of documents for the purpose of formulating a defense to the vague charges. (Document 14) They challenged the constitutionality of the "John Doe" indictment, contending that such a procedure amounted to a general warrant in violation of the Fourth Amendment. (Document 25) They argued further that the indictment should be quashed for misjoinder, alleging that separate offenses against several persons were improperly connected without a conspiracy charge. To dissipate the "taint of association," they requested that petitioner's trial be severed. (Document 31) The court ruled against their contentions on the constitutional objections, but as a result of counsel's efforts, two counts against Soto were

---

1. 28 U.S.C. § 2255 provides:

    "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.
    * * * *"

2. Alejo Rodriquez Santiago was charged with sale; Roberto Vargus, Orlando Zenon and Soto (then referred to as John Doe, a/k/a

Pablo) were charged with aiding and abetting.

3. Blumberg had been appointed on August 17 to represent Vargus. Some time during the week of August 23, he discovered that Mrs. Mauskopf was representing Soto. Sensing a potential conflict of interest, and to avoid the appearance of impropriety, Blumberg petitioned the court to withdraw as counsel. After the petition was granted, Blumberg joined with Mrs. Mauskopf in representing petitioner Soto.

dismissed, and the remaining counts were severed for trial.

On the day the case was called for trial, June 1, 1972, Soto's attorneys asked leave to withdraw as counsel, citing "a growing realization" on their part that Soto had "become displeased with [their] representation." As stated by Mauskopf, Soto had registered two fundamental objections. First, as a result of alleged discussions with attorneys in New York, he had decided that his attorneys were not raising all possible constitutional claims. Second, because the case was listed for trial, Mauskopf and Blumberg had told petitioner to contact them daily so they could advise him of the progress of the case on the court's trial list. Petitioner apparently viewed this request as a form of harassment and, according to Mauskopf, complained to Puerto Rican social agencies in the city that he was being mistreated. (N.T.3)

Following this statement by counsel, the court engaged in this colloquy with Soto:

"THE COURT: Mr. Soto, Mrs. Mauskopf indicates to me that you have expressed dissatisfaction with the manner in which she and Mr. Blumberg have represented you; is that correct?

MR. SOTO: Yes.

THE COURT: What arrangements, if any, have you made to get another attorney?

MR. SOTO: I haven't made no arrangement yet.

THE COURT: All right. Then I am not going to grant the request. I am going to insist that Mrs. Mauskopf remain, that Mr. Blumberg remain, that they will represent you to the best of their ability whether you like it or not. They will do the job that they in their professional opinion regard as a proper job to do on your behalf, and if you have any complaints later, you will make them in a proper fashion.

This case has been on my list for some period of time. You were aware that it was going to come up for trial, and I cannot tolerate at this last minute a lack of cooperation between you and your attorneys. The fact that you have chosen to consult with attorneys far away, who cannot help you, to give you advice on the kind of representation you are getting does not impress me at all.

If you wish to get attorneys of your own choosing, you are free to do so. When they come in here, I will entertain the application and permit them to substitute for Mrs. Mauskopf and Mr. Blumberg. In the meantime the Court is satisfied that they are quite competent and capable and have done a fine job on your behalf up to this point. They have fought hard for you."

The court went on to make it clear to petitioner that his attorneys were not at fault for requiring him to call in daily; that they were merely complying with the court's instructions in order to keep its calendar moving and to avoid unnecessary delays. (N.T.6–8) Immediately following this exchange, Soto waived his right to a jury trial, and the case was tried to the court, with the resultant finding of guilt on the charges of aiding and abetting sale of heroin. Counsel filed an appeal, which was unsuccessful, the conviction being affirmed sub nom, United States v. Santiago, 474 F.2d 1337 (3d Cir. 1972), and a petition for certiorari which was denied, Soto v. United States, 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed.2d 197 (1973). Thereafter, Soto filed this § 2255 petition.

Soto alleges that the court, in dealing with counsel's request to withdraw from the case, committed several errors which necessitate that sentence be vacated. Specifically, he argues first that the right to proceed *pro se* is protected by the Sixth Amendment of the Constitution and by 28 U.S.C. § 1654, and that the court was under a duty to advise him of that right. He charges further that the court erred in not ascertaining

from him, rather than from his counsel, the basis of his dissatisfaction with counsel's representation, and that by requiring him to go to trial with counsel he distrusted, the court deprived him of due process. Read liberally, Soto's petition also states a complaint of ineffective assistance of counsel during trial.[4]

## I.

I address first Soto's claims touching upon the right to proceed *pro se*. Although there is a continuing debate over whether the right of self-representation is constitutionally based,[5] there is no dispute that it is a fundamental right. It is squarely guaranteed by 28 U.S.C. § 1654,[6] a statute whose roots can be traced back directly to the Judiciary Act of 1789. As the Supreme Court has stated, "the Constitution does not force a lawyer upon a defendant." Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

█ Although I firmly believe that a defendant in a criminal case greatly reduces his chances of acquittal by the decision to dispense with counsel,[7] I recognize that it is within his power to do so if, after having been apprised of the risks, he voluntarily and intelligently waives the right to counsel and manifests a firm desire to "go it alone." Like most fundamental freedoms, the right to proceed *pro se* derives from the belief that respect for human dignity is best served by respect for individu-

---

4. Soto also claims that he cannot ascertain the length of his sentence. This argument is based on the following section of the sentencing transcript:

   "It is the sentence of this court under Criminal No. 72–256 under *Count II* thereof that you, Jose Juan Soto be committed to the custody of the Attorney General for a period of five years.
   "Under Count IV, it is the sentence of this court that you, Jose Juan Soto be committed to the custody of the Attorney General for a period of two years, said period of imprisonment to run concurrently with that imposed under *Count I.*" (Emphasis added)

   It is obvious that the reference to Count I was a clerical error by either the court reporter or the court. In any event, Soto's argument is plainly insubstantial. He was not mentioned in Count I of the indictment and consequently could not be convicted or sentenced under it. Moreover, the judgment and commitment form for this case clearly states that a two year sentence on Count IV is to run concurrently with the sentence imposed under Count II. I conclude that Soto was sufficiently apprised of the length of his sentence.

5. The Supreme Court has not resolved the question. Among the lower federal courts, the leading case supporting the constitutional right of self-representation is United States v. Plattner, 330 F.2d 271 (2d Cir. 1964). Supporting the view of the Second Circuit are Lowe v. United States, 418 F.2d 100 (7th Cir. 1969), cert. denied, 397 U.S. 1098, 90 S.Ct. 1378, 25 L.Ed.2d 660 (1970); United States v. Warner, 428 F.2d 730 (8th Cir. 1970), cert. denied, 400 U.S. 930, 91 S. Ct. 194, 27 L.Ed.2d 191 (1971); United States v. Pike, 439 F.2d 695 (9th Cir. 1971); holding *contra* are Juelich v. United States, 342 F.2d 29 (5th Cir. 1965); Van Nattan v. United States, 357 F.2d 161 (10th Cir. 1966).

   The lengthy recent opinion of the District of Columbia Circuit in United States v. Dougherty, 154 U.S.App.D.C. 76, 473 F.2d 1113 (1972) took no position on whether *pro se* representation has a constitutional basis. The question had been left open in Brown v. United States, 105 U.S.App.D.C. 77, 264 F.2d 363 (en banc), cert. denied, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959), although the plurality indicated its belief that the right was statutory only. For a thoughtful analysis of the respective positions, see *generally*, Self-Representation in Criminal Trials: The Dilemma of the Pro Se Defendant, 59 Calif.L.Rev. 1479 (1971).

6. 28 U.S.C. § 1654 provides:
   "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

7. The empirical studies tend to substantiate this view. See, e. g., The Right to Appear Pro Se: The Constitution and The Courts, 64 J. of Criminal Law and Criminology 240, 249 (1972), in which the authors conclude from reviewing a study of Chicago Criminal Courts "that the figures for self-represented defendants are sobering. Many judges remarked that they could not remember a victorious pro se defendant in a felony case and virtually all the rest put the success rate at less than 5%."

al freedom of choice. "[E]ven in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice 'with eyes open.' " [8] United States ex rel. Maldonado v. Denno, 348 F.2d 12, 15 (2d Cir. 1965), cert. denied sub nom, Di Blasi v. McMann, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966). Moreover, "[t]he denial of that right is not to be redeemed through the prior estimate of someone else that the practical position of the defendant will be enhanced through representation by another . . . . " United States v. Dougherty, 154 U.S. App.D.C. 76, 91, 473 F.2d 1113, 1128 (1972).

■■ In the instant case, however, these basic principles concerning self-representation were not called into issue. The transcript makes it abundantly clear that the petitioner at no time made any statement which could in any way be construed as a request to dispense with counsel and go to trial *pro se*. One of the stated reasons for the discontent with his attorneys was Soto's concern, *arising from alleged discussions with unnamed attorneys*, that his court-appointed counsel were not making all conceivable constitutional arguments. When the court asked Soto: "What arrangements, if any, have you made to get another attorney?", his response was: "I haven't made no arrangement yet." (N.T.3) From this exchange, the only fair inference which could be drawn was that Soto might be contemplating a *change* of counsel, not that he desired to dispense

with counsel and represent himself. At no time did Soto give any other indication, despite the fact that he did speak several times in reference to other matters. (N.T.5) The law requires "an unequivocal request" to waive counsel by the defendant who wishes to act as his own lawyer. United States v. Fay, 364 F.2d 219 (2d Cir. 1966); Meeks v. Craven, 482 F.2d 465 (9th Cir. 1973).[9] On this record, to have permitted Mauskopf and Blumberg to withdraw and to have required, or permitted, Soto to go to trial without counsel would have constituted clear, reversible error. *See, e. g.,* United States v. Fay, *supra*; United States v. Curtiss, 330 F.2d 278 (2d Cir. 1964); Meeks v. Craven, *supra*.

Soto's petition does not seem to dispute that an unequivocal request is required. Rather, his grievance is that the court was obligated to, and did not, advise him of the right to proceed *pro se*. This claim is based on the principle that a waiver of fundamental rights ordinarily entails "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ The issue of whether notice of the right to proceed *pro se* is required has been debated exclusively by the Second Circuit and the District of Columbia Circuit. The decisions of these courts are illuminating, and I conclude from them that I was under no absolute duty to advise Soto of his right to "go it alone."

In United States v. Abbamonte, 348 F.2d 700 (2d Cir. 1965), cert. denied, 382 U.S. 982, 86 S.Ct. 557, 15 L.Ed.2d 472

---

**8.** Although this statement is obviously most meaningful in the context of so-called "political trials," in which the defendants' beliefs are often crucially linked to the issues being tried, it retains significance in ordinary criminal trials.

**9.** In the recent *Meeks* case, for instance, the following colloquy took place:

"The Court: You still want to represent yourself?

The Defendant: Yes, Your Honor, I think I will."

The appellate court concluded that "Meeks' 'I think I will' is a prototype of equivocation." 482 F.2d at 467, and went on to state:

"An 'unequivocal' demand to proceed *pro se* should be, at the very least, sufficiently clear that if it is granted the defendant should not be able to turn about and urge that he was improperly denied counsel. 'I think I will' hardly meets the constitutional criteria for waiver of counsel."

(1966), the defendant, after several changes of counsel, appeared on the day of trial with his most recently retained one and requested another delay. The attorney stated he was ready to go to trial. The trial court refused to grant the delay, even after defendant made it clear that he wished to discharge his counsel. The Second Circuit upheld the trial court:

"Judge McLean could have reasonably inferred that appellant sought nothing more than a repetition of his maneuvers for delay, which was his real objective, by the tactic of firing still another lawyer, and that appellant had no intention of conducting his own defense because of any substantial dissatisfaction with his attorney. This would, of course, have been clearer if the court had followed the preferable procedure of inquiring of appellant whether he wished to continue with Mr. Krieger or, in the alternative, proceed *pro se*. But any reluctance we might have about resting our holding on inferences is dispelled by the conclusion that the appointment of Mr. Krieger helped rather than harmed Abbamonte . . . ." 348 F.2d at 704

*Accord*, United States v. Clausell, 389 F.2d 34 (2d Cir. 1968).

A similar result on the issue of notice was reached in United States ex rel. Maldonado v. Denno, *supra*. In that case the trial judge had forced a defendant to go to trial with an attorney he had met only "eight, ten minutes ago" without giving him notice of the right to proceed *pro se*. The trial court was apparently influenced by the fact that the defendant's attorney had "appeared in [that] court before" and that he was "a good lawyer." Even on these facts, the appellate court stated that notice of the right to appear *pro se* was unnecessary:

"Regardless of whether he has been notified of his right to defend himself, the criminal defendant must make an unequivocal request to act as his own lawyer in order to invoke the right. If an unequivocal request were not required, convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel. *And if notice of the right had to be given, the task of administering the overriding constitutional policy in favor of granting a lawyer to every person accused of a serious crime would become unduly treacherous.*" 348 F.2d 15–16 (Citations omitted; emphasis added)

The holding of these cases and the underlying reasoning is cited with approval in United States v. White, 139 U.S. App.D.C. 32, 429 F.2d 711 (1970), which reaffirmed that circuit's earlier view stated in Brown v. United States, *supra*, that notice of the right to appear *pro se* is not required.

Taken together, these decisions establish that where the defendant (1) did not request the right to proceed *pro se*, (2) was represented by competent counsel whose performance could be evaluated by the court, and (3) might have been objecting to his attorney for the purpose of delaying his trial, the failure to give notice is not error. In the instant case only elements 1 and 2 are clearly present, but even in the absence of element 3, and applying the established standards, there was no requirement to give notice of the *pro se* right. *Maldonado* and *Abbamonte*, in my view, represent a balancing of competing interests; on the one hand, a commitment to individual choice, on the other, "the overriding constitutional policy in favor of granting a lawyer to every person . . . ." *Maldonado, supra*, 348 F. 2d at 16. The former is adequately served by a rule which requires the court to permit a defendant to represent himself if the defendant affirmatively and intelligently manifests a desire to do so. It is not unreasonable to require a defendant who feels, either because of political belief or distrust of attorneys, that he can best represent himself to express that view in some way. For a

court, unsolicited, to "inform" a defendant of his right to represent himself would unduly undermine the overriding policy favoring representation by counsel. The judicial system is not neutral on the advisability of proceeding to trial without counsel. The famous words of Justice Sutherland in Powell v. Alabama, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932), which were restated by Justice Black in Gideon v. Wainwright, 372 U.S. 335, 344–345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1962), bear repeating:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and

knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

To recapitulate: as a matter of fact, Soto did not request the right to proceed *pro se*, and as a matter of law there was no obligation on the court to advise him of the right to dispense with counsel and represent himself.[10]

## II.

Soto next contends that he was denied due process because the court forced him to go to trial represented by counsel with whom he was dissatisfied, without inquiring into the basis of his dissatisfaction. It is petitioner's view that due process demands that the court question him about his grievances, rather than accept counsel's explanations of their differences. Closely related to these claims is the more basic contention that a defendant should not be forced to trial with counsel he dislikes.

---

10. The conclusion that this position is sound is further buttressed by the observation that the Second Circuit tested, and found wanting, a prophylactic rule which would have required notice of the right to appear *pro se.* It will be recalled that United States v. Plattner, *supra,* established the Second Circuit's view that the right to appear *pro se* was constitutionally based. In conformity with that view, the court stated:

"Accordingly, in all cases of this type, no matter how the indigent or other defendant may phrase his prayer for action by the Court, it is incumbent upon the presiding judge, by recorded colloquy with the defendant, to explain to the defendant: that he has the choice between defense by a lawyer and defense *pro se*; that, if he has no means to retain a lawyer of his own choice, the judge will assign a lawyer to defend him, without expense or obligation to him; that he will be given a reasonable time within which to make the choice; that it is advisable to have a lawyer, because of his special skill and training in the law and that the judge believes it is in the best interest of the defendant to have a lawyer, but that he may, if he elects to do so, waive his right to

a lawyer and conduct and manage his defense himself." 330 F.2d at 276

*Accord,* United States v. Fay, *supra.*

However, neither *Plattner* nor *Fay* was decided squarely on the issue whether notice of the right to proceed *pro se* is required. In both cases, error was committed by the trial judge on other issues relating to self-representation. In *Plattner,* for instance, the trial court summarily rejected the defendant's request to represent himself in future *coram nobis* proceedings. In *Fay,* the trial court had forced the defendant to go to trial alone despite his protest that he had no desire to represent himself. While setting forth a general procedure for dealing with *pro se* cases, the court in *Plattner* and *Fay* stated that trial courts should notify defendants of their right to appear *pro se.* When faced with the specific question of whether the rule should be interpreted to require reversal of trial judges who failed to give notice, the court concluded that notice was "preferable" procedure, not an absolute requirement, and that failure to give notice did not constitute the kind of error that necessitated reversal.

Brown v. United States, *supra*, addressed itself to these overlapping issues. In that case, Brown challenged his conviction on the ground that the court should have either informed him of his right to proceed *pro se* or replaced the attorney with whom he was dissatisfied. In a colloquy with the court, Brown's attorney stated that the defendant was disenchanted with him because of his evaluation that his client had little chance of "beating the thing." Brown argued on appeal that the court committed reversible error by not asking the defendant whether he was dissatisfied with counsel and why. The plurality opinion gave that argument short shrift:

"[A]ppellant contends here that the judge committed reversible error by not consulting him personally as to the cause of his dissatisfaction with his lawyer. But he does not say there was any cause other than that stated by the attorney or that, had he personally been asked, he would have given a different reason . . . . We cannot suppose that . . . [he] would have given a different reason . . . . Nor can we reverse and remand for a new trial merely to give the appellant the satisfaction of being personally asked why he wanted to dismiss his counsel . . . when, as far as we know or have been

informed he would give no reason except that given by his attorney." [11] 264 F.2d at 366.

■■ In the instant case, the facts are far more compelling than in *Brown*. Like Brown, Soto has alleged no basis for dissatisfaction other than those stated by counsel. Moreover, unlike Brown, Soto took an active part in a colloquy conducted by the court designed to illuminate the difficulties between counsel and him.[12] By his participation, Soto clearly confirmed the accuracy of counsel's statements as to what was troubling him.[13] His willingness to speak leads me to believe that if he had had any other objections, he would have voiced them. Due process obligates a trial judge to explore the sources of a defendant's dissatisfaction with counsel to eliminate the possibility of a hostile and ineffective representation. The record discloses that that obligation was discharged properly here.

■■ Petitioner also argues that upon becoming aware of his dissatisfaction with counsel, the court was duty bound to accept the motion to withdraw. This is not the law. In the absence of "good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict," United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972), the court is not re-

11. The plurality opinion later stated that even if the trial judge should not have accepted counsel's statement at face value, the lapse was not so prejudicial as to require reversal.

12. One of the most troublesome aspects of the *Brown* case to the dissenters was that the defendant could not hear the exchange between counsel and the court and therefore could not challenge any inaccuracies in counsel's statement. 264 F.2d at 369, n. 1.

13. For example, Mrs. Mauskopf stated to the court:

"It culminated in a discussion with Mr. Soto very recently telling him that his case was in the pool and that we would want him to contact us daily in order that he could be informed of the progress of Your Honor's list and when he might be required for trial, and he was reluctant to

do that and, in fact, he has on various occasions complained to Puerto Rican social agencies in the City that we have not treated him fairly in this regard." (N.T. 3)

Subsequently, the following exchange took place:

"MR. SOTO: Your Honor, can I say something?

THE COURT: You certainly may.

MR. SOTO: My point is that I am working and I work in the morning and in the afternoon. I got a split shift. Sometime I got to go away in the morning and I come back late. So, like I told her—she told me to call her at nine, so I call her at 9 o'clock and I say, I be away. She told me to be on trial ten. That is going to be impossible. I just can't leave the truck."

quired to set aside a prior appointment of counsel and appoint new counsel. United States v. Davis, 365 F.2d 251 (6th Cir. 1966); United States v. Burkeen, 355 F.2d 241 (6th Cir.), cert. denied sub nom, Matlock v. United States, 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); United States v. Young, 482 F.2d 993 (5th Cir. 1973) and the cases cited therein. "Good cause" was manifestly lacking in this case. Petitioner Soto's resentment about the instructions to telephone counsel each day while the case was on the trial list would have surfaced no matter who represented him, since counsel were complying with court rules. His concern that counsel were not doing a thorough job on the substantive matters of his defense was unfounded. The work of Mauskopf and Blumberg in preparing for trial was unimpeachable. Their defense was spirited, and their written work was of a high intellectual quality —far above the general requirement of normal competency.[14] Moore v. United States, 432 F.2d 730 (3d Cir. 1970). Their reluctant request to withdraw in no way undermined their desire or ability to defend Soto fully and effectively after the request was denied. The offer to withdraw was attributable only to counsel's belief that defendant wanted new counsel, not to any lack of enthusiasm on their part about the case itself. They were quite apparently willing and anxious to go to trial in a case on which they had expended a great deal of time and effort.

### III.

Soto's petition also charges that he did not receive the effective assistance of counsel at trial. The earlier stated conclusion that attorneys Mauskopf and Blumberg had performed ably up to the date of the trial undercuts one common ground on which ineffective assistance of counsel claims are based, i. e., inadequate preparation. Nevertheless, because it is conceivable that counsel could be well-prepared for trial and yet perform deficiently in court, it is necessary to review the trial transcript as a whole to ascertain if petitioner's claim of ineffective assistance has any basis.

The standard for determining whether counsel rendered satisfactory assistance was stated in Moore v. United States, 432 F.2d 730, 736–737 (3d Cir. 1970):

"[T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place.

A retrospective examination of a lawyer's representation to determine whether it was free from any error would exact a higher measure of competency than the prevailing standard . . . . But since what is required is normal and not exceptional representation, there is room for the realization that it would be difficult to find a case where even the ablest and most experienced trial lawyer would be completely satisfied after a searching re-examination of his conduct of a case."

In *Moore,* the Court of Appeals concluded that the District Court had erred by deciding petitioner's inadequacy of counsel argument without an evidentiary hearing. The appellate court's review of the transcript raised significant doubt about the effectiveness of Moore's counsel. In a case in which the issue of identification was fundamental, Moore's attorneys failed to interview witnesses in advance of trial who could have testified that they were unable to identify

---

14. As noted *supra,* the efforts of counsel resulted in a dismissal of two counts and a severance of Soto's trial. With regard to the quality of their work, the court takes particular note of defendant's brief in support of motion to produce documents and the testimony of the grand jury, (Document 14), and defendant's brief in support of the motion to dismiss the indictment and quash the indictment, or in the alternative, to sever (Document 31).

Moore at a lineup in two instances, picking him out only on the third attempt after the FBI had pointed him out at an arraignment on other charges. Additionally, there was no explanation for counsel's failure to call or comment on the government's failure to call two other eye witnesses.

The transcript of Soto's trial discloses no apparent omissions or deficiencies. The sole issue in Soto's case was whether he had been in a certain apartment during the time that a heroin sale was consummated. Fred Thrift, an undercover agent from the Bureau of Narcotics and Dangerous Drugs who bought the heroin, testified that Soto was there and that he "spooned" out the heroin which Thrift purchased. Thrift's testimony about the sale and Soto's involvement was corroborated by the testimony of Alejo Rodriquez Santiago, one of the men who had been indicted with Soto, and who had previously pled guilty in a separate trial to charges of selling heroin. J. J. Macready, an agent of the Bureau of Narcotics and Dangerous Drugs, testified that he conducted a surveillance of the apartment in question at the time the heroin transaction allegedly took place, and he positively identified Soto as the man he observed leaving the apartment shortly after the transaction.

In the face of this strong evidence, Blumberg introduced the testimony of defendant Soto and Angelo Melendez, the owner of the apartment where the sale had taken place. Soto testified that he had not been in the apartment on the evening in question; that he was not a friend of Santiago; and that he had never played any part in selling narcotics. (N.T. 153–156) Melendez denied knowing defendant at the time of the alleged narcotics sale; denied that heroin was ever used or sold in his apartment and stated that neither Santiago nor Thrift had ever been in his apartment. (N.T. 182–186) This presented a clear credibility conflict which the court, as the finder of fact, resolved in favor of the prosecution.

In his attempt to persuade the fact finder to rule in his client's favor, Mr. Blumberg's efforts, both during cross-examination and closing argument, were well within the range of customary skill and competence. He attempted to undercut Agent Thrift's identification by pointing up disparities between his report and his in-court testimony concerning points of identification. (N.T. 54–57; 68–69; 215) When Agents Thrift and Macready testified to arresting Soto at a school for truck drivers in Harrisburg, counsel attacked their ability to identify Soto by attempting to point out that he was practically the only Spanish-American person in the school. (N.T. 60–61; 216) Counsel's cross-examination of Santiago emphasized that he was a convicted felon awaiting sentence and suggested that his testimony against Soto was designed to earn Santiago a lesser sentence. (N.T. 95–98) Although none of these lines of attack was remarkably imaginative, the case was not one which lent itself to legal virtuosity. Blumberg properly located potential "soft" spots in the stories of government witnesses and attacked them strongly in cross-examination and argument. He did not overlook any apparent flaws in the government's case. Accordingly, there is no substance to the ineffective assistance of counsel charge.

## IV.

I am aware that "where . . . a motion for relief under § 2255, raises an issue of fact which cannot be conclusively determined from 'the motion and the files and records of the case,' the movant is entitled to a judicial hearing at which . . . witnesses may be heard." Del Piano v. United States, 362 F.2d 931, 933 (3d Cir. 1966). I conclude, nevertheless, that in Soto's case an evidentiary hearing is not required.

In determining whether an evidentiary hearing is needed, the crucial inquiry is whether additional facts must

be adduced before a fair adjudication of petitioner's claim can be made. In cases such as *Del Piano, supra,* and Machibroda v. United States, 368 U.S. 487, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962), where the 2255 motion is based on a claim that a guilty plea was coerced, evidentiary hearings are unquestionably required. "The factual allegations contained in the petitioner's motion and affidavit . . . related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection." *Machibroda, supra,* at 494–495, 82 S.Ct. at 514.

In contrast, the legal issues raised by Soto's claim can be fully and fairly adjudicated on the basis of "the motions and files and records of the case." Whether the court is obligated to notify petitioner of the right to appear *pro se* is strictly a legal issue. Whether petitioner's attorneys afforded him "competent" representation can be resolved by reviewing first, the documents submitted during the period prior to trial and then, the trial transcript. Whether Soto's stated desire to discharge his attorneys should be equated with a request to proceed *pro se* requires the application of a legal standard to the colloquy which took place on the record between counsel, the court and Soto prior to the commencement of trial. On all issues, therefore, the facts which are relevant are presently before the court.

Moore v. United States, *supra,* does not require a different conclusion. Although in *Moore* the Court of Appeals concluded that the trial judge had erred by not holding an evidentiary hearing on the issue of effective assistance of counsel, the court's rationale was that there was no adequate way to determine from the transcript of trial whether an attorney appointed shortly before the date of trial had made adequate preparations. In the instant case, however, counsel were appointed ten months before the time of trial, and the record is replete with evidence of their diligence.

Accordingly, for all the reasons above stated, Soto's petition to vacate sentence will be denied.